[No. 47550–4. En Banc. October 15, 1981.]

CERTIFICATION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
IN
LIGE DICKSON COMPANY, *Appellant*, v. UNION
OIL COMPANY OF CALIFORNIA, *Appellee*.

*Billett, Comfort & Rosenow,* by *Cameron Sherwood* and *Robert A. Comfort,* for appellant.

*LeSourd, Patten, Fleming, Hartung & Emory,* by *Lawrence E. Hard* and *John F. Colgrove,* for appellee.

DORE, J.—The Ninth Circuit Court of Appeals certified the following question[1] to us:

> Under the law of the State of Washington, may an oral promise otherwise within the statute of frauds, Wash. Rev. Code § 62A.2–201, nevertheless be enforceable on the basis of promissory estoppel? *See* Restatement (Second) of Contracts § 217A. *See generally Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wash.2d 255, 616 P.2d 644 (1980).

Our answer to this question is "no". Analysis and elaboration follow.

The business relationship between plaintiff Lige Dickson Company (or its predecessor partnership) and defendant Union Oil Company of California is long standing, dating from 1937. Plaintiff was a general contractor and purchased its oil–based products from defendant. In 1964, defendant encouraged and aided plaintiff in entering the asphalt paving business. From 1964 through 1973, with one exception, plaintiff purchased all its liquid asphalt from defendant. In the ordinary course of business, plaintiff telephoned orders to defendant, plaintiff was invoiced, and all bills were paid.

---

[1] A federal court may certify a question of law to this court. RCW 2.60.020 reads as follows:

"When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto."

RCW 2.60.020 is implemented by RAP 16.16.

Plaintiff and defendant never executed a written contract providing for the sale and purchase of liquid asphalt.

From 1964 until late 1970, the defendant's price for liquid asphalt remained constant. In December 1970, all of the suppliers of liquid asphalt in the Tacoma area raised their prices. Responding to this in May or June of 1971, plaintiff requested, and defendant provided, an oral guaranty against further increases insofar as would affect those contracts which committed the plaintiff to manufacture and sell asphalt paving at fixed, agreed sums. A list was made of the plaintiff's contracts and the parties computed the amount of liquid asphalt needed to fulfill them. At the same time, defendant promised plaintiff that any upward change in price would be applicable only to contracts which plaintiff entered into after the price increase.

At trial, an official of defendant conceded that by November 1973 there was an unwritten custom in the liquid asphalt business in the Tacoma area, well known and acted upon by suppliers and users; that any increase in price of liquid asphalt would not be applicable to manufacturers' then–existing contracts. From mid–1971 until November 1973, defendant's sales representatives visited plaintiff and ascertained tonnage of liquid asphalt needed for plaintiff to fulfill existing paving contracts and also promised plaintiff that the price for that liquid tonnage would be protected.

Nevertheless, in November 1973 defendant wrote to plaintiff that the price of liquid asphalt was rising by $3 per ton and plaintiff was informed on December 6 and 13, 1973 of further increases. The new prices were to be applicable to all purchases made after December 31, 1973. This was plaintiff's first notification that defendant was abandoning the parties' price protection agreement. In addition, the new prices were on a "verbal, indefinite basis . . . subject to change" with or without notice.

Without a firm supplier, plaintiff was unable to seek new paving contracts during the first part of 1974. What liquid asphalt was available was used by plaintiff to complete

existing contracts. Plaintiff incurred a total increased out-of-pocket cost of $39,006.50 in acquiring liquid asphalt to perform existing contracts.

Plaintiff brought suit against defendant in the United States District Court for Western Washington for breach of contract. The trial court found that there was an oral contract between the parties, but the statute of frauds, RCW 62A.2-201[2] rendered the contract unenforceable. The cause was appealed to the Ninth Circuit which certified the question quoted above to this court.

The facts as outlined above are contained in the District Court's findings of fact which were made part of the record before this court. In the Ninth Circuit appeal, defendant has assigned errors to certain of these findings. These contentions, however, are not before us. We do not need certainty in the facts to answer the pure question of law presented for our determination. The Ninth Circuit has

---

[2] "62A.2-201 Formal requirements; statute of frauds. (1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

"(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

"(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted . . ."

retained jurisdiction over all matters but the narrow question of law certified here.

The Restatement (Second) of Contracts § 217A (Tent. Drafts Nos. 1–7, 1973)[3] (hereinafter § 217A) authorizes enforcement of a promise which induced action or forbearance by a promisee notwithstanding the statute of frauds. Adoption of § 217A was before this court in *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 616 P.2d 644 (1980).

In *Klinke,* the plaintiff had been induced by defendant to leave his employ in Alaska and to move to Washington to establish a food franchise. Defendant had promised plaintiff that defendant would qualify and register in Washington as a dealer in franchises. After plaintiff's move, defendant failed to secure the proper dealer registration and later abandoned its efforts to do so. The plaintiff claimed $200,000 in lost time and wages and other damages. On summary judgment, the trial court dismissed the case because RCW 19.36.010(1)[4] voids unwritten contracts

---

[3]The Restatement (Second) of Contracts § 217A (Tent. Drafts Nos. 1–7, 1973) reads:

"Enforcement by Virtue of Action in Reliance

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

"(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

"(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

"(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

"(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

"(d) the reasonableness of the action or forbearance;

"(e) the extent to which the action or forbearance was foreseeable by the promisor."

[4]RCW 19.36.010 states, in part:

"In the following cases, specified in this section, any agreement, contract and

which cannot be performed in 1 year. The Court of Appeals reversed the trial court based on two theories. *Klinke v. Famous Recipe Fried Chicken, Inc.*, 24 Wn. App. 202, 600 P.2d 1034 (1979). First, defendant's failure to reduce the agreement with plaintiff to a writing, and plaintiff's reliance on such promise, estopped defendant from asserting the statute of frauds as a defense. Restatement of Contracts §§ 90, 178, comment *f* (1932). Second, the Court of Appeals adopted § 217A. On review of that decision, we refused to adopt § 217A but affirmed the court's reversal on its first theory. We stated:

> The unforeseen application of section 217A to areas of law outside the scope of the facts of this case convinces us that it would be unwise to adopt that section now unless necessary to effectuate justice. That is not mandated by the facts of this case.

*Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 262, 616 P.2d 644 (1980).

Plaintiff in the subject case urges us to now adopt § 217A as being "necessary to effectuate justice". Plaintiff focuses on the parties' long–standing relationship and defendant's responsibility "in great part" for introducing plaintiff into the asphalt paving business. Plaintiff also asserts that defendant's price protection agreement and assurances encouraged (*i.e.*, induced?) plaintiff to make bids and enter into contracts.

Defendant asks this court to distinguish the statute of frauds at issue in *Klinke* from the statute of frauds contained within the Uniform Commercial Code (U.C.C.) at issue here.[5] Such distinction has been recognized.

---

promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof . . ."

[5]The Uniform Commercial Code as adopted in Washington is found at RCW Title 62A. Reference to U.C.C. § 2–201 and § 1–103 in this opinion are intended to refer to Washington's corresponding sections.

The statute of frauds requirements may vary as to the nature of the agreements involved, and a close examination of the subject matter of the oral promise in question is therefore warranted. For example, if the oral promise in question concerned the sale of goods, the attorney would want to be aware of the requirements set out in UCC § 2–201(3) which states the circumstances under which a contract for the sale of goods may be enforceable notwithstanding the statute of frauds. . . . It should be pointed out that where there exists, in statute or in case law, clearly established means under which a contract dealing with a particular subject matter may be rendered enforceable notwithstanding the statute of frauds, the courts may be hesitant to apply promissory estoppel in such a manner as to enlarge upon those means of avoiding the statute.

(Footnotes omitted.) Annot., *Comment Note.—Promissory Estoppel as Basis for Avoidance of Statute of Frauds,* 56 A.L.R.3d 1037, 1045 (1974). The Ninth Circuit Court of Appeals has held, in interpreting and applying California law, that U.C.C. § 2–201 cannot be overcome through the application of the doctrine of promissory estoppel. *C.R. Fedrick, Inc. v. Borg–Warner Corp.,* 552 F.2d 852 (9th Cir. 1977). The Kentucky Supreme Court reached the same conclusion based upon the U.C.C.'s internal method of avoiding § 2–201's hardship. *C.G. Campbell & Son, Inc. v. Comdeq Corp.,* 586 S.W.2d 40 (Ky. Ct. App. 1979). It reasoned that the statutory avoidance of § 2–201 found in § 2–201(3) was as far as the legislature was willing to go and

any attempt by the courts to judicially amend this statute which is plain on its face would contravene the separation of powers mandated by the Constitution.

*Campbell,* at 41.

On the other hand, the Iowa Supreme Court reached the opposite result in *Warder & Lee Elevator, Inc. v. Britten,* 274 N.W.2d 339 (Iowa 1979). That court found that U.C.C. § 1–103[6] provided the authority for the use of promissory

---

[6]Washington's version of § 1–103, found at RCW 62A.1–103, reads:

"Unless displaced by the particular provisions of this Title, the principles of

estoppel to defeat the statute of frauds. That section provides, *inter alia,* that "unless displaced by the particular provision of this chapter" estoppel and other validating or invalidating doctrines shall supplement the U.C.C. The court reasoned that the exceptions to the statute of frauds found at § 2-201(3)(a)-(c) are "definitional" and were not meant to displace equitable and legal principles otherwise applicable to contract actions.

> If [2-201] were construed as displacing principles otherwise preserved in [1-103], it would mean that an oral contract coming within its terms would be unenforceable despite fraud, deceit, misrepresentation, dishonesty or any other form of unconscionable conduct by the party relying upon the statute. No court has taken such an extreme position. Nor would we be justified in doing so. Despite differences relating to the availability of an estoppel defense, courts uniformly hold "that the Statute of Frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding[,] protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme." 3 Williston on Contracts §553A at 796 (Third Ed. Jaeger, 1960).

*Warder & Lee Elevator, Inc. v. Britten, supra* at 342.

Defendant asks us to adopt the view of the dissent in *Warder & Lee Elevator, Inc. v. Britten, supra.* The thrust of the dissent is that § 1-103 allows estoppel to supplement the U.C.C. "unless displaced by the particular provisions of this chapter"; and § 2-201 contains its own limiting language in that the statute of frauds applies "except as otherwise provided *in this section".* (Italics ours.) Further, the dissent noted that a party to an oral contract who has been defrauded has available the equitable remedy of restitution. In such a case, the recovery is based on the wrong, not on a contract.

---

law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

From the limited record before us in the subject case, it appears that equitable estoppel is not available to the plaintiff. There seems to be neither allegation nor proof of fraud or deceit. Plaintiff's only remedy may be based upon breach of the oral contract. Nonetheless, we must hold that promissory estoppel cannot be used to overcome the statute of frauds in a case which involves the sale of goods.

■■ The Uniform Commercial Code was adopted to regulate commercial dealings. Uniformity among different jurisdictions in decisions concerning commerce was a major motivation behind development of the U.C.C. By so doing, it was hoped that this area of the law would become clearer and disputes would be more readily resolved. These policies are enunciated in the U.C.C., in part, as follows:

> 62A.1–102 Purposes; rules of construction; variation by agreement . . .
> (2) Underlying purposes and policies of this Title are
> (a) to simplify, clarify and modernize the law governing commercial transactions;
>
> . . .
> (c) to make uniform the law among the various jurisdictions.

It was hoped that commercial transactions could take place across state boundaries without the stultifying effect caused by differences in states' laws.

> The Uniform Commercial Code, hammered out by lawyers, judges and law teachers dedicated to clarity and good business sense in commercial law, has brought together into one coherent statement the best laws and practices prevalent in the United States.

American Bar Ass'n, *Uniform Commercial Code Handbook,* "The Uniform Commercial Code," at 1 (1964).

> Because of the federal system, the American lawyer, probably more than any other, has been conscious of the disadvantages of differing laws. Internally he has tried to do something about it.

American Bar Ass'n, *Uniform Commercial Code Handbook,* "The Uniform Commercial Code," at 19 (1964).

If we were to adopt § 217A as applicable in the context of

the sale of goods, we would allow parties to circumvent the U.C.C. *See Warder & Lee Elevator, Inc. v. Britten, supra* (Reynoldson, C.J., dissenting). For example, to prove justifiable reliance (an element of promissory estoppel), the promisee may offer evidence of course of dealing between the parties, as plaintiff did in this case. The Official Comments to RCWA 62A.1-205(4) state that the statute of frauds

restrict[s] the actions of the parties, and . . . cannot be abrogated by agreement, or by a *usage of trade* . . .

(Italics ours.) RCWA 62A.1-205, at 71.

Notwithstanding our appreciation of plaintiff's dilemma, we cannot help but foresee increased litigation and confusion as being the necessary result of the eroding of the U.C.C. if § 217A is adopted in this case. We join the other courts which limit the doctrine of promissory estoppel from overcoming a valid defense based on the statute of frauds contained within the Uniform Commercial Code. By so doing, we make no comment on the applicability of § 217A to defeat the raising of the statute of frauds as a defense under RCW 19.36.010.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, WILLIAMS, and DIMMICK, JJ., concur.

ROSELLINI, J. (concurring specially)—I agree with the majority that, in order to preserve the integrity of the Uniform Commercial Code, the question submitted by the Ninth Circuit Court of Appeals must be answered in the negative. It is evident that the legislature gave careful thought to the circumstances which would justify exceptions to the requirement of a written contract, and those exceptions are set forth in the act itself. They do not include circumstances which in other areas of law might invoke the doctrine of promissory estoppel.

While the code makes no provision for relief under the theory of promissory estoppel, it does provide an exception to the requirement of a writing

if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; . . .

RCW 62A.2–201(3)(b).

There is in the District Court's findings some suggestion that there may have been such an admission here. If that were the case, the code itself would provide a remedy.

HICKS, J., concurs with ROSELLINI, J.