**B & W GLASS, INC., Plaintiff–Appellee,**

v.

**WEATHER SHIELD MFG., INC.,
Defendant–Appellant.**

No. 91–123.

Supreme Court of Wyoming.

April 10, 1992.

Mark R. Smith, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, Mich., and Thomas G. Gorman, Hirst & Applegate, P.C., Cheyenne, for defendant-appellant.

Douglas G. Madison, Dray, Madison & Thomson, P.C., Cheyenne, for plaintiff-appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY, and GOLDEN, JJ.

THOMAS, Justice.

The only question involved in this case is the one certified to this court by the United States Court of Appeals for the Tenth Circuit. In the Certification of Question of State Law, that court states the certified question to be:

> Under the law of the State of Wyoming, may an oral promise otherwise within the statute of frauds as pronounced in Wyo. Stat. § 34.1–2–201 [1991] and the Uniform Commercial Code, nevertheless be enforceable on the basis of promissory estoppel? *See* Restatement (Second) of Contracts § 90 (1981).

We hold that the doctrine of promissory estoppel can be applied under these circumstances to enforce an oral promise, and the

certified question is answered in the affirmative.

An understanding of the application of the doctrine of promissory estoppel by the federal district court in this case requires a careful review of the business transaction which preceded this litigation. B & W Glass, Inc. (B & W) is a Wyoming corporation that sells and installs windows in both commercial and residential buildings. The principals in B & W are three brothers, Larry, Tom, and Doug Ludtke. Sometime during the first three months of 1987, Larry Ludtke learned of a General Services Administration (GSA) project that called for replacement of all the windows in the federal courthouse in Casper, Wyoming. After reviewing the GSA plans, Larry Ludtke prepared a list of specifications for the windows to be replaced, including dimensions, depth and types of glazing required.

Doug Ludtke then contacted Weather Shield Mfg. Inc. (Weather Shield) which is a Wisconsin corporation engaged in the manufacture of both standard size and custom windows. The purpose of Doug Ludtke's contact was to obtain a price quotation. Robert Schwalbe (Schwalbe), an experienced salesman familiar with bidding practices and price quotation procedures, acted on behalf of Weather Shield. Using the list of specifications that Larry Ludtke had prepared, Doug Ludtke discussed the GSA project with Schwalbe in Denver, Colorado. In the course of the first meeting, Schwalbe indicated he thought Weather Shield could produce the windows required for the project, but he explained he needed to check with company officials in Wisconsin.

At a brief second meeting between Schwalbe and Doug Ludtke, Schwalbe presented an itemized, written quotation, dated March 24, 1987, for windows to be used on the project. There is a dispute between the parties with respect to the specific type of windows quoted. Weather Shield's claim is that the quotation was for windows that are mass produced and normally stocked or carried in the company's catalog. B & W's contention is that the quotation included custom windows as well as stock windows. Subsequently, Larry Ludtke reviewed the written quotation, and he telephoned Schwalbe advising him there were too many size discrepancies in the quotation and custom windows, designed to meet GSA specifications, would be required.

A third meeting was scheduled between Schwalbe and Doug Ludtke, in Denver, for the purpose of reviewing the complete GSA project plans and specifications. At trial, Doug Ludtke testified that, at this third meeting, he and Schwalbe went through the plans and specifications together. He said Schwalbe indicated using custom windows would increase the cost, but Weather Shield had no problem in making the custom windows. Doug Ludtke stated that, at the conclusion of this meeting, he gave Schwalbe a copy of the plans and specifications to use preparing a bid. Schwalbe testified, to the contrary, that he could not have been provided with plans and specifications since he spent only forty-five minutes preparing the new quotation.

It is uncontroverted that, following the third meeting with Doug Ludtke, and on or before April 14, 1987, Schwalbe telephoned Larry Ludtke to quote a price of $101,725 for the Weather Shield windows to be used on the project. B & W never received written confirmation of this oral price quotation.

On April 14, 1987, B & W, relying upon the Weather Shield price quotation, submitted its bid to the project's general contractor. The B & W bid was oral and was delivered by telephone around noon on the day that the general contractor's bid for the project was submitted. Two days later, Larry Ludtke was advised that B & W was the low bidder for supplying and installing the windows on the project. B & W also received a letter of intent, dated April 20, 1987, from the general contractor. Larry Ludtke then telephoned Schwalbe to advise him that B & W had received the letter of intent and that B & W would purchase Weather Shield windows for the project.

In either May or June, 1987, Larry Ludtke and Schwalbe met in Cheyenne to review the plans and specifications in detail. Schwalbe received another set of the plans and specifications to send to the Weather Shield plant so that "shop drawings" could be prepared for the construction of the windows. Schwalbe and Larry Ludtke exchanged numerous telephone calls during the balance of the summer in the course of which they discussed the progress of the shop drawings and delivery and production schedules.

After B & W signed a contract with the general contractor in August of 1987, Larry Ludtke arranged for "field measurements" on the existing windows at the Casper federal courthouse. Larry Ludtke, accompanied by an architect from the Cheyenne area, met with Schwalbe in Denver in September to discuss these measurements. During that meeting, Larry Ludtke delivered a letter to Schwalbe, dated September 21, 1987, requesting the shop drawings and providing another set of plans which contained the "field measurements" of the window sizes.

Following that meeting, from late September to December 3, 1987, Larry Ludtke telephoned Schwalbe on numerous occasions, each time requesting the shop drawings and other information. Finally, during the December 3 telephone call, Schwalbe committed to the completion of the shop drawings by December 14, 1987. This commitment was ineffectual, however, because Schwalbe's employment with Weather Shield was terminated in December, 1987. When Larry Ludtke failed to receive the shop drawings and was not able to contact Schwalbe, other Weather Shield employees were contacted. Ultimately, on December 30, 1987, Tom Ludtke spoke to a Weather Shield supervisor, Dan Emerich, who said that Weather Shield could not produce the windows.

After Weather Shield declined to produce the windows, B & W obtained custom windows from another manufacturer at a total cost of $226,579. Upon demand, Weather Shield refused to pay B & W the difference between Weather Shield's quoted price and the actual cost of the windows purchased from the other manufacturer.

B & W then filed suit in the District Court of the First Judicial District of the State of Wyoming in and for Laramie County. Weather Shield answered and successfully petitioned for removal of the case to the United States District Court for the District of Wyoming, pursuant to 28 U.S.C. § 1332 (1986). Extensive discovery followed, after which Weather Shield moved for summary judgment on the ground that no written contract existed between the parties and the purported oral contract was unenforceable under the Wyoming enactment of the Uniform Commercial Code (UCC) statute of frauds. At the same time, B & W moved to amend its complaint to add a claim of promissory estoppel. Weather Shield's motion for summary judgment was denied, and the B & W motion to amend was granted. The United States District Court ruled that Wyoming would allow the doctrine of promissory estoppel to remove an oral contract from the statute of frauds provision found in the UCC.

The case went to trial on three theories: breach of contract; breach of good faith and fair dealing; and promissory estoppel. The United States District Court granted a directed verdict in favor of Weather Shield on the breach of contract and good faith and fair dealing claims. The promissory estoppel theory was submitted to the jury. The jury found in favor of B & W, but it was deadlocked with respect to damages, and the United States District Court declared a mistrial. Weather Shield then moved for a directed verdict and to strike the jury and enter judgment in its favor. The United States District Court granted Weather Shield's motion to strike the jury, but it entered judgment in favor of B & W.

In an opinion order, the United States District Court found that Schwalbe was an authorized agent of Weather Shield and was aware of the plans and specifications for the courthouse project prior to making the oral bid. The court ruled that the bid quotation was made "without any excep-

tions," which, under usage of the trade, meant the quote was for products meeting the plans and specifications that had been provided. The United States District Court concluded that promissory estoppel had been established and the oral contract between the parties existed and was enforceable despite the statute of frauds provision in Wyoming's version of the UCC. Judgment was entered against Weather Shield for breach of contract in the amount of $100,214.48, with interest. Weather Shield took an appeal to the United States Court of Appeals for the Tenth Circuit, which certified the promissory estoppel question to this court.

■ The facts stated above essentially are contained in the Findings of Fact entered in the United States District Court and the Certification of Question of State Law from the United States Court of Appeals for the Tenth Circuit, both of which were made a part of the record before this court. Other than certain preliminary matters, the parties sharply contest the facts of this case. In its appeal to the United States Court of Appeals for the Tenth Circuit, Weather Shield has assigned error with respect to some of the district court findings. That dispute is not a part of the case before this court, however. The role of this court in answering certified questions does not include fact finding. *Reliance Ins. Co. v. Chevron U.S.A., Inc.*, 713 P.2d 766 (Wyo.1986). Wyo.R.App.P. 11.01 provides as follows:

> The Supreme Court may answer questions of law certified to it by a federal court when requested by the certifying court, if there is involved in any proceeding before it a question of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

*See* Wyo.Stat. §§ 1–13–104 to –107 (1988). Because this court's jurisdiction pursuant to the rule and statute is limited, we do not consider the extra-record argument of counsel involving post-deliberation jury interviews and certain trial exhibits that are not included in the record on appeal. *See* Wyo.R.App.P. 4.01 and 5.01.

The answer to a pure question of law presented for our determination does not require certainty with respect to the facts. *Lige Dickson Co. v. Union Oil Co. of California*, 96 Wash.2d 291, 635 P.2d 103 (1981). The legal question to be answered, posed by the certification order from the United States Court of Appeals for the Tenth Circuit, is clear and undisputed. Once this court determines the applicable rule of law, the controversy between the parties must center on which findings of fact are material. Jurisdiction is retained by the United States Court of Appeals for the Tenth Circuit to apply the Wyoming law articulated in this opinion to those facts and decide the matters in controversy between the parties. *K–W Industries, a Div. of Associated Technologies, Ltd. v. National Sur. Corp.*, 231 Mont. 461, 754 P.2d 502 (1988).

The certified question presented by the United States Court of Appeals for the Tenth Circuit asks whether an equitable principle, promissory estoppel, will be applied to defeat the operation of a statute of frauds. The philosophical conflict embodied in this question implicates principles of statutory construction, fundamental fairness, and certainty in the law which have been the subject of legal debate in the English common law system since the Middle Ages. *See* Henry L. McClintock, Handbook of the Principles of Equity § 22 (2nd ed. 1948). The policy choice required by this certified question is one that demands a detailed review. The analysis pursued considers the specific section or sections of the UCC that are applicable in this controversy; the effect of that application; the authorization under the UCC to invoke equitable principles generally; whether the UCC displaced equitable principles with its statute of frauds; the role of promissory estoppel in Wyoming's jurisprudence apart from statutes; and, finally, the application of promissory estoppel in the context of the

UCC statute of frauds. *See* Robert S. Summers, *General Equitable Principles Under Section 1–103 of the Uniform Commercial Code,* 72 Nw.U.L.Rev. 906 (1978) [hereinafter *General Equitable Principles*].

 Promissory estoppel is a doctrine incorporated in the law of contracts. Restatement (Second) Contracts § 90 (1981). Judge Posner has provided a considered and succinct description of the doctrine: "If an unambiguous promise is made in circumstances calculated to induce reliance, and it does so, the promisee if hurt as a result can recover damages." *Goldstick v. ICM Realty,* 788 F.2d 456, 462 (7th Cir. 1986). Promissory estoppel is recognized as both a sword and a shield—a cause of action and a defense. Equitable estoppel is a close relative, but it is a tort doctrine that requires proof of misrepresentation. *Goldstick.*

Neither party disputes the applicability of the UCC, as adopted in Wyoming, to the transaction that resulted in this litigation. At its most basic level, that transaction involved a sale of goods, windows, by a seller, Weather Shield, to a buyer, B & W. B & W contends an oral contract was formed between the parties upon which it relied, to its detriment. Weather Shield challenges the reliance upon an oral contract contending that, even if one existed, it was for goods priced at $500 or more and cannot be enforced under the UCC statute of frauds which provides:

(a) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(b) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (a) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

(c) A contract which does not satisfy the requirements of subsection (a) but which is valid in other respects is enforceable:

(i) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(ii) If the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(iii) With respect to goods for which payment has been made and accepted or which have been received and accepted (Section 34.1–2–606).

Wyo.Stat. § 34.1–2–201 (1991), previously codified as Wyo.Stat. § 34–21–208 (1977) (hereinafter § 2–201 or statute of frauds). In this case, there is no writing that satisfies the requirements of § 2–201(a) or (b). None of the three exceptions to the writing requirement, set forth in subsection (c) of the statute, apply to the facts as stated. Weather Shield contends that the exceptions found in subsections (b) and (c) are the exclusive exceptions to the statute of frauds recognized under the UCC. Weather Shield supports this argument by reference to the language: "Except as otherwise provided in this section...." Wyo. Stat. § 34.1–2–201(a) (1991). Weather Shield asserts that this language demonstrates the legislative intent to limit the exceptions. Acceptance of this restrictive view espoused by Weather Shield would result in a conclusion that the effect of

§ 2–201 is to prevent enforcement of the oral agreement between the parties.

B & W argues that the UCC, read as a whole, incorporates a provision that supplements the language of § 2–201 with the principles of equity, including promissory estoppel. It points to the provisions of Wyo.Stat. § 34.1–1–103 (1991), previously codified as Wyo.Stat. § 34–21–103 (1977) (hereinafter § 1–103), which provides:

Unless displaced by the particular provisions of this act [§§ 34.1–1–101 through 34.1–10–104], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

B & W's argument is that the language of § 2–201 does not specifically displace promissory estoppel as that doctrine supplements the provisions of the code pursuant to § 1–103. Acceptance of the liberal view espoused by B & W results in a conclusion that the effect of § 1–103 is to allow promissory estoppel to defeat the operation of the statutes of frauds.

■ Decisions of other courts offer persuasive support when questions of the interpretation of uniform laws arise. *See Apodaca v. State,* 627 P.2d 1023 (Wyo. 1981). The decisions on whether promissory estoppel will serve to avoid the UCC statute of frauds track a storm-battered course. *See* Vitauts M. Gulbis, Annotation, *Promissory Estoppel as Basis for Avoidance of UCC Statute of Frauds (UCC § 2–201),* 29 A.L.R.4th 1006 (1984 & Supp.1991). The majority position espouses the rule that principles of promissory estoppel under § 1–103 operate as an exception to the statute of frauds. The minority position is that estoppel does not constitute an exception to the requirements of § 2–201. Note, *Promissory Estoppel: Subcontractors' Liability in Construction Bidding Cases,* 63 N.C.L.Rev. 387 (1985). B & W and Weather Shield vigorously urge the positions found in the authorities that support their respective views. We have identified appropriate points of departure for consideration in our review of this issue.

Two general themes can be identified in the authorities of those jurisdictions that approve a promissory estoppel exception to the UCC statute of frauds. If an estoppel exception has been generally recognized in that jurisdiction under other statutes of frauds, then the exception usually has been found in § 2–201. *See, e.g., R.S. Bennett & Co., Inc. v. Economy Mechanical Industries, Inc.,* 606 F.2d 182 (7th Cir.1979) (applying Illinois law); *Ralston Purina Co. v. McCollum,* 271 Ark. 840, 611 S.W.2d 201 (Ct.App.1981); *Warder & Lee Elevator, Inc. v. Britten,* 274 N.W.2d 339 (Iowa 1979); *Decatur Co-op Ass'n v. Urban,* 219 Kan. 171, 547 P.2d 323 (1976); *Potter v. Hatter Farms, Inc.,* 56 Or.App. 254, 641 P.2d 628 (1982). These courts in approving of the exception have held that § 1–103 allows the doctrine of promissory estoppel to supplement § 2–201. *Allen M. Campbell Co., General Contractors, Inc. v. Virginia Metal Industries, Inc.,* 708 F.2d 930 (4th Cir.1983) (applying North Carolina law); *Ralston Purina; Potter.*

The *Allen M. Campbell* case, arising under factually similar surroundings to this case, provides a useful example of the analysis and rationale used by those courts approving the use of promissory estoppel. Allen M. Campbell Co. had prepared a bid on a Department of the Navy contract to construct housing. Only one-half hour before the bids were due, Virginia Metal Industries telephoned Allen M. Campbell Co. and quoted a price for hollow metal doors and frames that would meet the plans and specifications. Allen M. Campbell Co. based its bid on the quoted price and was awarded the contract. Virginia Metal Industries then backed out of the contract and Allen M. Campbell Co. covered by purchasing doors from another supplier at a higher cost. The United States Court of Appeals for the Fourth Circuit ruled that North Carolina recognized and applied the doctrine of promissory estoppel. *Allen M. Campbell.* The court stated that, pursuant to § 1–103, equitable principles were available to supplement § 2–201 and, after surveying relevant case law, the court concluded that North Carolina's approval of promissory estoppel provisions in the Restate-

ment (Second) of Contracts §§ 90, 139 (1981) signaled its acceptance of the view that promissory estoppel avoids the statute of frauds.

In those jurisdictions that have espoused the rule that promissory estoppel is not available to avoid the statute of frauds under the UCC, consistent themes also are discernable. The fundamental distinction begins with the refusal to consider § 1–103 as supplementing the UCC with principles of equity, including estoppel. *See, e.g., C.R. Fedrick, Inc. v. Borg–Warner Corp.*, 552 F.2d 852 (9th Cir.1977) (applying California law); *McDabco, Inc. v. Chet Adams Co.*, 548 F.Supp. 456 (D.S.C.1982) (applying South Carolina Law); *Cox v. Cox*, 292 Ala. 106, 289 So.2d 609 (1974); *C.G. Campbell & Son, Inc. v. Comdeq Corp.*, 586 S.W.2d 40 (Ky.Ct.App.1979); *Anderson Const. Co., Inc. v. Lyon Metal Products, Inc.*, 370 So.2d 935 (Miss.1979). Another reason those courts have chosen to deny the use of promissory estoppel as available to avoid § 2–201 is the refusal in those jurisdictions to permit the doctrines of estoppel to defeat general statutes of frauds. *Cox; Anderson Const. Co.*

A leading decision that rejects the application of promissory estoppel to avoid the statute of frauds found in § 2–201 is *Lige Dickson*, 635 P.2d 103. The question presented in that case to the Supreme Court of Washington was whether an oral price protection agreement with a liquid asphalt supplier would be upheld. The buyer relied on the consistent selling price in submitting bids for construction contracts. The Washington court reviewed its previous position denying the invocation of promissory estoppel to overcome the general statute of frauds and noting the limiting language at the beginning of § 2–201, that court ruled promissory estoppel is not available to overcome the UCC's statute of frauds. The need for uniformity among different jurisdictions and decisions affecting commercial transactions was offered as another reason not to permit promissory estoppel to circumvent the statute of frauds in the UCC.

Conflicting decisions of state and federal courts in the same jurisdiction further magnify the divergence in precedent. *Compare, e.g., McDabco,* (holding estoppel not available in South Carolina to defeat § 2–201) with *Atlantic Wholesale Co., Inc. v. Solondz*, 283 S.C. 36, 320 S.E.2d 720 (Ct. App.1984) (holding a silver dealer would be allowed to recover for the buyer's breach of an oral contract because, in South Carolina, estoppel prevented the buyer from asserting a defense of failure to comply with § 2–201); *see also Goldstick* (declining to rule on present status of Illinois law). Another example is found in California where the Ninth Circuit Court of Appeals applied state law and ruled the doctrine of estoppel could not be used to defeat the need for a writing under § 2–201. *C.R. Fedrick.* The California Court of Appeal, however, ruled in *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal.App.3d 432, 249 Cal.Rptr. 872 (1988), that promissory estoppel constituted an exception to § 2–201. The *Allied Grape* court critically said the Ninth Circuit used inconsistent analysis, failed to consider the effect of § 1–103 and, in conclusional fashion, found the statute of frauds would be eviscerated if estoppel applied.

█ In our view, the better-reasoned approach is articulated by those courts that have approved the majority view that promissory estoppel avoids § 2–201. We do not accept, however, the argument that this question can be resolved by simply adopting the logic of one line of decisions. The divergent authorities offer an opportunity for choice without specific policy concerns. That approach leads away from a primary duty of this court which is the charge that we implement legislative policy found in the enactment of the UCC. We conclude that the analysis of the certified question becomes primarily a matter of statutory interpretation for which Wyoming has established standards.

█ Questions that reach to statutory interpretation require the court to endeavor to perceive the legislative intent. *Phillips v. Duro–Last Roofing, Inc.*, 806 P.2d 834 (Wyo.1991). Legislative intent is to be ascertained, insofar as possible, from the language incorporated in the statute, which is viewed in light of its object and purpose.

*Belle Fourche Pipeline Co. v. State,* 766 P.2d 537 (Wyo.1988). Statutes that relate to the same subject matter should be harmonized whenever that is possible. *Stauffer Chemical Co. v. Curry,* 778 P.2d 1083 (Wyo.1989). In pursuing this endeavor every subsection of a statute must be read in the context of all others to ascertain the meaning of the whole statute. *Gookin v. State Farm Fire and Casualty Ins.,* 826 P.2d 229 (Wyo.1992); *Story v. State,* 755 P.2d 228 (Wyo.1988).

 In addition to these general rules of statutory construction, the UCC also has incorporated within it useful rules of construction and a statement of its purpose. The act is to be liberally construed and applied to promote its underlying purposes and policies. Wyo.Stat. § 34.1–1–102(a) (1991); *Century Ready–Mix Co. v. Lower & Co.,* 770 P.2d 692 (1989), *appeal after remand sub nom. Century Ready–Mix Co. v. Campbell County School Dist.,* 816 P.2d 795 (Wyo.1991). According to the legislative pronouncement, the purposes of the UCC are to simplify, clarify, and modernize the law governing commercial transactions; to permit continued expansion of commercial practices through custom, usage, and agreement of the parties; and to make uniform the law among the various jurisdictions. Wyo.Stat. § 34.1–1–102(b) (1991). Professors White and Summers suggest a further purpose of the UCC is "that the law of commercial transactions be, so far as reasonable, liberal and nontechnical." 1 James J. White & Robert S. Summers, Uniform Commercial Code § 4 (3d ed. 1988) [hereinafter White & Summers]. The authors apparently disagree, however, on the application of the doctrine of estoppel to avoid the statute of frauds. White & Summers §§ 2–6, 2–8. The official comments attached to the UCC, while not controlling an interpretation of the scope and intent of the Code, are persuasive. *ABM Escrow Closing and Consulting, Inc. v. Matanuska Maid, Inc.,* 659 P.2d 1170 (Alaska 1983).

In Wyoming, rigid adherence to the UCC statute of frauds is contrary to the liberal construction philosophy surrounding the code. *Century Ready–Mix.* Professor Corbin, in urging the adoption of the UCC by the several states, noted: "The purpose of the statute of frauds is to prevent the enforcement of alleged promises that never were made; it is not, and never has been, to justify contractors in repudiating promises that were in fact made." Arthur L. Corbin, *The Uniform Commercial Code— Sales; Should It Be Enacted?,* 59 Yale L.J. 821, 829 (1950). Another commentator asserts that the statute of frauds is the weapon of the written law to prevent fraud; estoppel is the equitable means invoked to achieve this end. 3 Walter H.E. Jaeger, Williston on Contracts § 533A (3rd ed. 1960).

In light of our approach to statutory construction, we are satisfied that, if promissory estoppel is to become an exception to § 2–201, it must be because of the provisions of § 1–103. Estoppel is specifically included in the listing of principles supplementing the UCC. Wyo.Stat. § 34.1–1–103 (1991). We previously have recognized the entry to general principles of law and equity found in § 1–103 to supplement the UCC. *Western Nat. Bank of Casper v. Harrison,* 577 P.2d 635 (Wyo.1978) (allowing the law of waiver to supplement UCC provisions). Unless it is displaced, § 1–103 imposes a duty to interpret and construe the UCC by taking into account the equities of a particular case. *General Equitable Principles,* 72 Nw.U.L.Rev. 906.

We adopt the suggestions of Professor Summers as a framework for our analysis of whether the equitable principle of promissory estoppel can apply despite the statute of frauds in the UCC. His proposition is that the supplementary principles of law and equity incorporated into the operation of the UCC by virtue of § 1–103 survive unless it can be established that: (1) the principle is explicitly displaced by name in the plain language of the statute; (2) the specific objectives of the section would be served only by displacement of the principles of law and equity; (3) the general objectives of the UCC are best furthered by displacement of those principles; and (4) the legislative history plainly indicates displacement. *General Equitable Principles,* 72 Nw.U.L.Rev. 906. We will apply these

criteria in our consideration of the question of whether § 2–201 displaces promissory estoppel.

Certainly, the UCC does require that supplemental bodies of law be "explicitly displaced" to void the effect of § 1–103. Wyo.Stat. § 34.1–1–103 (1991) (Official Comment 1). Neither the text of § 2–201 nor the comments following it specifically refer to estoppel. White & Summers § 2–7. This silence on the part of the legislature in the language of the statute can not be construed to constitute a displacement of estoppel principles. *Potter*, 641 P.2d 628. For this reason, we disagree with the conclusions of the court in *Futch v. James River–Norwalk, Inc.* 722 F.Supp. 1395 (S.D.Miss.), *aff'd*, 887 F.2d 1085 (5th Cir. 1989), and *McDabco*, 548 F.Supp. 456, that the opening language of § 2–201 represents a displacement of the principles of promissory estoppel. As found in § 2–201, the phrase "[e]xcept as otherwise provided in this section" is simply a clause modifying the first subsection. Wyo.Stat. § 34.1–2–201(a) (1991). The intention of the Wyoming legislature in beginning Subsection (a) with that clause, is apparent from a reading of the entire section. Subsection (a) is the general statement of the statute of frauds applicable to the sale of goods. White & Summers § 2–3. The effect of the initial limiting language in subsection (a) is to alert the reader that the remaining subsections are disjunctive, and it serves to advise the reader of the proposition that the statutory exceptions to the statute of frauds are contained in subsections (b) and (c). Furthermore, the statutory exceptions listed in § 2–201(c) are not exhaustive. *Warder & Lee Elevator*, 274 N.W.2d 339; White & Summers § 2–7. Neither the language of the statute of frauds nor any legislative history indicates that § 2–201 displaces promissory estoppel.

Secondly, we conclude the specific objectives of § 2–201 would not be served by displacing promissory estoppel. The long-stated purpose of the statute of frauds is to prevent fraud from perjured testimony about nonexistent oral agreements. However, the concepts of equity and the passage of years resulted in the creation of

exceptions to the writing requirement as a necessity to prevent substantive fraud. The part performance doctrine is one such exception that is specifically stated in the UCC. Wyo.Stat. § 34.1–2–201(c)(iii) (1991). Still, the UCC was not drafted to anticipate the equities of every possible transaction. The specific inclusion of § 1–103 permits the invocation of principles of both law and equity as necessary to the resolution of commercial disputes. An adherence to a strict policy of demanding a writing in all cases that are not specifically exempted by § 2–201(b) or (c) would allow unscrupulous contractors to perpetrate fraud after creating reliance. The courts should be vigilant to inhibit the defense of the statute of frauds when that defense becomes an instrument for perpetrating fraud. *Vogel v. Shaw*, 42 Wyo. 333, 294 P. 687 (1930).

The third factor to be considered is whether the general objectives of the UCC would be served by displacement of promissory estoppel. We conclude they would not. The *Lige Dickson* court argued that uniformity among the several jurisdictions was the reason not to allow promissory estoppel to avoid the statute of frauds. *Lige Dickson*, 635 P.2d 103. That logic is not persuasive in view of the fact that the majority of jurisdictions allow promissory estoppel to avoid the provisions of § 2–201. *Drennan v. Star Paving Co.*, 51 Cal.2d 409, 333 P.2d 757 (1958), is a leading case allowing promissory estoppel to defeat a general statute of frauds. Writing for the Supreme Court of California, Justice Traynor clearly set forth the principle of fairness implicit in recognizing the doctrine of promissory estoppel:

When [the general contractor] used [the subcontractor's] offer in computing his own bid, he bound himself to perform in reliance on [the subcontractor's] terms. Though [the subcontractor] did not bargain for this use of its bid neither did [the subcontractor] make it idly, indifferent to whether it would be used or not. On the contrary it is reasonable to suppose that [the subcontractor] submitted its bid to obtain the subcontract. It was bound to realize the substantial

possibility that its bid would be the lowest, and that it would be included by [the general contractor] in his bid. It was to its own interest that the contractor be awarded the general contract; the lower the subcontract bid, the lower the general contractor's bid was likely to be and the greater its chance of acceptance and hence the greater [the subcontractor's] chance of getting the paving subcontract. [The subcontractor] had reason not only to expect [the general contractor] to rely on its bid but to want him to. Clearly [the subcontractor] had a stake in [the general contractor's] reliance on its bid. Given this interest and the fact that [the general contractor] is bound by his own bid, it is only fair that [the general contractor] should have at least an opportunity to accept [the subcontractor's bid] after the general contract has been awarded to him.

*Drennan*, 333 P.2d at 760.

The invocation of the doctrine of promissory estoppel to avoid § 2–201 is consistent with authority that permits promissory estoppel to avoid a general statute of frauds. *See* Robert A. Brazener, Annotation, *Comment Note–Promissory Estoppel As Basis For Avoidance Of Statute Of Frauds*, 56 A.L.R.3rd 1037 (1974 & Supp.1991). The argument that application of promissory estoppel should change depending upon whether goods (UCC) or services (general statute) are involved simply begs the fundamental question of fairness. If the application of promissory estoppel is fair in one context, it must also be in the other. Reliance created by a subcontractor, who quotes a price for services, is the same as that which is created by another subcontractor, who quotes a price for goods. Therefore, in addition to the statutory exceptions found in § 2–201, the nonstatutory exception to the writing requirement, promissory estoppel, is also present through § 1–103. *Northwest Potato Sales, Inc. v. Beck*, 208 Mont. 310, 678 P.2d 1138 (1984); White & Summers § 2–6.

A recognition that promissory estoppel avoids the UCC statute of frauds is consistent with our prior Wyoming cases. *See Inter–Mountain Threading, Inc. v. Baker*

*Hughes Tubular Services, Inc.*, 812 P.2d 555 (Wyo.1991), and the cases cited in that opinion. While some courts have expressed a reservation to the effect that recognizing nonstatutory exceptions to the statute of frauds may render it a nullity, *McDabco*, 548 F.Supp. 456, Wyoming has accepted a role of leadership in invoking equitable principles to avoid injustice. The need to enforce an implied promise to mortgage some cattle resulted in the first approval in Wyoming of the doctrine of promissory estoppel as stated in the Restatement of Contracts, § 90 (1932). *Hanna State & Savings Bank v. Matson*, 53 Wyo. 1, 77 P.2d 621 (1938). In *Tremblay v. Reid*, 700 P.2d 391 (Wyo.1985), Wyoming adopted the principles of promissory estoppel as they are stated in the Restatement (Second) Contracts § 90(1) (1981).

The drafters of the Restatement (Second) have taken an even more definite position on the availability of promissory estoppel to avoid the statute of frauds:

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is be limited as justice requires.

Restatement (Second) Contracts § 139 (1981).

The drafters of the Restatement (Second) use *Vogel*, 294 P. 687, as an illustration of the section's application to avoid injustice. Restatement (Second) Contracts § 139 (Reporter's Note 1981). In *Remilong v. Crolla*, 576 P.2d 461 (Wyo.1978), this court approved the use of promissory estoppel, as phrased in the Restatement (Second), to avoid the general statute of frauds in Wyoming. In that case, we ruled that buyers of land could enforce an oral promise from the seller that all trailers would be removed from adjacent lands.

Our most recent cases are demonstrative of the safeguards that are present in the

application of the doctrine of promissory estoppel. The elements of promissory estoppel demand evidence that establishes: "(1) a clear and definite agreement; (2) proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and (3) a finding that the equities support enforcement of the agreement." *Inter–Mountain Threading,* 812 P.2d at 559; *Provence v. Hilltop Nat. Bank,* 780 P.2d 990, 993 (Wyo.1989). The party who is asserting promissory estoppel is assigned the burden of establishing all of the elements of the doctrine with a standard of strict proof. *Provence.* In both *Inter–Mountain Threading* and *Provence,* the party seeking relief by invoking promissory estoppel failed to establish the requisite elements. *Inter–Mountain Threading; Provence. See also, Four Nines Gold, Inc. v. 71 Const., Inc.,* 809 P.2d 236 (Wyo.1991).

We do not share the concern that was present in the English courts of the 17th Century to the effect that a writing is the sole method to avoid undetected perjured testimony. Our judicial system is capable of discerning perjury and reaching a determination in an instance in which a litigant establishes promissory estoppel by appropriately assuming his burden.

Consistently with the majority rule and the law in Wyoming relating to general statutes of frauds, we conclude that promissory estoppel can and does justify the enforcement of an oral promise otherwise within the statute of frauds in the UCC, as articulated in Wyo.Stat. § 34.1–2–201 (1991). Under the foregoing analysis, our answer to the certified question is "yes".