# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOHNSON BROTHERS CONTRACTING, INC.,

    Appellant,

v.

SIMPSON TACOMA KRAFT COMPANY, LLC,

    Respondent.

No. 71735-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 4, 2014

APPELWICK, J. — Johnson Brothers Contracting, Inc. appeals the summary judgment order dismissing its breach of contract, promissory estoppel, and negligent misrepresentation claims against Simpson Tacoma Kraft Company, LLC. JBC sued after Simpson declined to follow through with an oral eighteen month contract for the sale of hog fuel. Simpson argues that JBC's claims are barred by the statute of frauds and the independent duty doctrine. We affirm.

## FACTS

In early 2009, Simpson Tacoma Kraft Company LLC was building a power plant that would require large quantities of "hog fuel" to operate. "Hog fuel" is ground forest slash that is used to fuel generators. Johnson Brothers Contracting Inc. (JBC), a Montana company, produces hog fuel. Simpson approached JBC to supply hog fuel for its plant.

The parties met on March 3, 2009 at a Chehalis restaurant owned by Brent Deroo. Deroo acted as JBC's hog fuel sales broker in the negotiations. Simpson was represented by Steve Regelin, its fuel procurement manager at that time. Regelin indicated that Simpson was a few months away from completing its plant and would soon need about 100 truckloads of hog fuel per day to run the plant's generators.

During their discussion, the parties agreed on JBC supplying 90 truckloads a week for 12 months, after which either party could give written notice to terminate the agreement six months from that date. Each truckload held about 33 tons. The parties discussed an initial price of $53 per ton. The going rate for hog fuel at that time was $63 per ton, so this was a good deal for Simpson. Simpson also proposed that JBC set up a processing site in Olympia, nearby Simpson's plant, to reduce trucking and transport costs. No written contract was produced.

A few days later, Regelin sent an e-mail to JBC acknowledging the meeting and their discussions. Johnson requested that Regelin send a more detailed letter of intent so Johnson could present it to a lender if he needed to obtain funding. Regelin did so, writing, "This letter is to confirm Simpson Tacoma Kraft Company's desire to enter into an agreement with Johnson Brothers Contracting, Inc. to purchase hog fuel produced in your facilities." It then detailed the terms set forth by the parties. The letter concluded, "I believe this captures the items we discussed and I'm looking forward to developing this important source of hog fuel using forest slash material."

Though the letter was sufficient to obtain funding, it was more "wishy-washy" than Johnson would have liked. But, Johnson thought the parties made a deal at the March 3 meeting. Johnson also thought that Regelin and Deroo were proceeding as if the deal was done. Deroo treated the March 3 meeting as a commitment, one that obligated JBC to move forward on the project.

According to Johnson and Deroo, Regelin called at the end of March and confirmed that JBC should proceed with the Olympia site per the terms of the March 23 letter. JBC obtained a site lease from Welco LLC, and developed the Olympia location

for the purpose of providing hog fuel to Simpson. JBC expended about $200,000 setting up the processing site. Simpson's representatives visited the processing site regularly as it progressed. One Simpson representative, Blayde Fry, visited several times that spring.

In late spring, Regelin retired and a new fuel buyer, Bill Disbrow, took over. At this point, Disbrow indicated that Simpson would not be purchasing hog fuel from JBC's Olympia site as discussed. Fry had expressed concern about the quality of JBC's Olympia hog fuel, which he said led to Simpson's ultimate decision not to enter into a contract with JBC. According to Regelin, neither the March 3 meeting nor the March 23 letter constituted a binding contract. Instead, they were demonstrations of interest in entering into an agreement in the future. Johnson maintained, however, that the parties had formed a contract that Disbrow broke because he overcommitted to other suppliers that offered better deals.

Disbrow instructed JBC to shut down the site to "stop the bleeding." JBC resold its hog fuel to another company, but at a loss.

On March 12, 2012, JBC sued Simpson for breach of contract, promissory estoppel, and negligent misrepresentation. Simpson moved for summary judgment seeking to dismiss all of JBC's claims. Simpson argued that the statute of frauds barred JBC's breach of contract and promissory estoppel claims; that JBC failed to present a valid negligent misrepresentation claim; and that the statute of limitations precluded JBC's suit.

The court granted Simpson's motion in its entirety. JBC appeals.

DISCUSSION

This court reviews summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). When considering the evidence, we draw reasonable inferences in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). We may affirm the trial court's ruling on any grounds adequately supported by the record. State v. Costich, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

I.  Breach of Contract

JBC asserts that the trial court improperly concluded that the statute of frauds barred its breach of contract claim. Under the statute of frauds, certain contracts must be in writing to be valid. See RCW 19.36.010. This includes contracts that will not be performed in one year. RCW 19.36.010(1). Where a contract is for the sale of goods, the Uniform Commercial Code (UCC) applies. RCW 62A.2-101, .2-102. The UCC has its own statute of frauds provision, which states that a contract for the sale of goods for $500 or more is not enforceable unless it is in writing. RCW 62A.2-201(1). JBC does not assert that it had a written contract for this transaction, nor that it had an oral agreement for a year or less.

A.  Contract for Services or Goods

Johnson contends that its agreement with Simpson was not for the sale of goods, but for a service—namely, the processing and transport of hog fuel. Where a contract involves both goods and labor, this court looks to the "predominant factor" of the contract

4

to determine whether it is for goods or services. Tacoma Athletic Club, Inc. v. Indoor Comfort Sys., Inc., 79 Wn. App. 250, 257, 902 P.2d 175 (1995).

In Tacoma Athletic, the defendant sold and installed a dehumidification system for the plaintiff. Id. at 252. The defendant argued that the parties had a construction contract, not a sale of goods. Id. In applying the predominant factor test, the Court of Appeals looked at both the written terms of the contract and the parties' negotiations. Id. at 258-59. The court found that substantial evidence supported the trial court's conclusion that the contract was for the sale of goods:

> The negotiations leading up to the contract focused on the goods, not the services, aspect of the sale. Comfort Systems recommended a specific product to the Club, Dri-Aire dehumidifiers. The Club president insisted on viewing other facilities at which Dri-Aire dehumidifiers had been installed. The written contract predominantly lists the goods being sold [and] states that the "system includes" labor. This language clearly suggests that the subject of the sale is "the system," with the labor incidental to the system.

Id.

Here, the parties' negotiations similarly reflect a focus on the goods aspect of the contract. Simpson approached JBC with the desire to purchase a specific tonnage of hog fuel. JBC replied with its production capacity, also expressed in terms of quantity. The parties discussed a price per ton, not per hour. And, Regelin's letter of intent, which reflects the parties' negotiations, refers to Simpson's desire to "purchase hog fuel" and notes Simpson's quality standards for a product, not for services.

This is not a case where Simpson hired JBC to exclusively process forest slash that Simpson had on site. JBC obtained the slash from various sources, processed it, and prepared it for sale by the ton. Though labor was required to convert the slash into

5

the final product, the predominant factor of the contract was the hog fuel. The parties' contract was for the sale of goods and thus falls under the UCC.[1]

B. Exception to Writing Requirement

JBC argues that its agreement with Simpson was nonetheless enforceable under an exception to the UCC writing requirement. Where a contract does not satisfy the writing requirement, but is valid in other respects, it is enforceable if

> the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement.

RCW 62A.2-201(3)(a).

JBC argues that section (3)(a) preserves the parties' contract, because JBC substantially changed its position in reliance on Simpson's oral agreement and incurred damages as a result. JBC notes that it set up the Olympia site specifically for Simpson. However, JBC cites no authority to indicate that goods produced at a specific site would be necessarily be "specially manufactured" under the UCC. Importantly, the goods here were suitable for sale to others in the ordinary course of JBC's business: JBC's President Ernest Johnson stated that JBC was able to sell all of the hog fuel to another buyer "without any trouble." Thus, they were not specially manufactured nor unsuitable for sale to others as required to trigger this section.

---

[1] JBC argues that, were this court to find that the parties' contract was for services—not goods—the contract would survive under the general statute of frauds provision, RCW 19.36.010. However, that statute similarly bars JBC's claim, as it renders void an oral contract exceeding one year. RCW 19.36.010(1). It contains no exception for contracts for services.

The parties did not form a valid contract. The trial court properly granted summary judgment on JBC's breach of contract claim.

## II. Promissory Estoppel

JBC argues that the trial court improperly dismissed its promissory estoppel claim.[2] However, an oral promise for the sale of goods that is otherwise barred by the statute of frauds is not enforceable on the basis of promissory estoppel. Lige Dickson Co. v. Union Oil Co. of Cal., 96 Wn.2d 291, 292, 635 P.2d 103 (1981). JBC attempts to distinguish the present case, arguing that the Lige court had limited facts that did not require it to intervene with equity. Though the Lige court commented that equitable estoppel did not seem appropriate on the facts before it, its ultimate conclusion was a legal one: "[p]romissory estoppel cannot be used to overcome the statute of frauds in a case which involves the sale of goods." Id. at 299.

Lige controls here. The trial court properly granted summary judgment on JBC's promissory estoppel claim.

## III. Negligent Misrepresentation

JBC contends that the trial court improperly dismissed its negligent misrepresentation based on the independent duty doctrine. Under this doctrine, a party seeking to recover for breach of contract may also recover for breach of a tort duty if the tort duty arose independently of the terms of the contract. Eastwood v. Horse Harbor

---

[2] Simpson argues that JBC's promissory estoppel and negligent misrepresentation claims were barred due to JBC's lapsed corporate registration status at the time of suit. However, JBC cured this problem by paying its license fee on June 28, 2012. See Portland Ass'n of Credit Men, Inc. v. Earley, 42 Wn.2d 273, 279, 254 P.2d 758 (1953) ("Nonpayment of the license fee affects only the corporation's capacity to maintain the action at time of trial."), overruled on other grounds by Ford v. Logan, 79 Wn.2d 147, 150, 483 P.2d 1247 (1971).

Found., Inc., 170 Wn.2d 380, 389, 241 P.3d 1256 (2010). JBC fails to demonstrate an independent tort duty.

JBC alleges that Simpson committed negligent misrepresentation when Regelin orally agreed to honor an 18 month hog fuel contract with JBC, even though he lacked the authority to do so. Washington law recognizes the tort of negligent misrepresentation as set forth in Restatement (Second) of Torts § 552(1) (1977):

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

Hines v. Data Line Sys., Inc., 114 Wn.2d 127, 150, 787 P.2d 8 (1990) (emphasis added). "[T]o prevail on a claim of negligent misrepresentation, a plaintiff must prove by clear, cogent, and convincing evidence that he or she justifiably relied on the information that the defendant negligently supplied." Lawyers Title Ins. Corp. v. Baik, 147 Wn.2d 536, 545, 55 P.3d 619 (2002).

The statute of frauds renders void any oral agreement that cannot be performed in one year. RCW 19.36.010(1). Therefore, as a matter of law, it would be impossible for Regelin to make an enforceable 18 month oral contract with JBC. Accordingly, JBC cannot present clear, cogent, and convincing evidence that it justifiably relied on a negligent misrepresentation.

The trial court properly granted summary judgment on JBC's negligent misrepresentation claim.

8

## IV. Attorney Fees

JBC requests attorney fees and costs under RCW 4.84.010. RCW 4.84.010(6) provides that a prevailing party shall be allowed to recover certain expenses, including statutory attorney fees. JBC is not the prevailing party. We deny JBC's request.

The trial court properly granted summary judgment dismissing JBC's suit in its entirety. We affirm.

_Appelwick, J._

WE CONCUR:

_Trickey, J_                    _Becker, J._