**McDABCO, INC., Plaintiff,**

v.

**CHET ADAMS COMPANY and Noise Control Products, Inc., Defendants.**

**Civ. A. No. 82–534–15.**

United States District Court,
D. South Carolina,
Columbia Division.

Sept. 17, 1982.

Robert F. Fuller, Columbia, S. C., for plaintiff.

Hardwick Stuart, Jr., Columbia, S. C., for defendant Chet Adams Co.

Robert C. Kelly, Columbia, S. C., for defendant Noise Control Products, Inc.·

## ORDER

HAMILTON, District Judge.

This matter is before the court upon the motion of the defendant Chet Adams Company (hereafter "Chet Adams") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Subsequent to the filing of this motion, defendant Noise Control Products, Inc., notified the court by letter that it was joining in Chet Adams' motion. Plaintiff did not ob-

ject to Noise Control Products, Inc., joining in this motion. All parties agreed that if Chet Adams' motion was granted, Noise Control Products, Inc., would also be entitled to summary dismissal since its liability was grounded solely on the allegations that Chet Adams acted as its agent. The court therefore treats Chet Adams' motion as if it were originally made on behalf of both defendants.

This motion is based solely on the complaint and plaintiff's answers to defendants' interrogatories.[1] Plaintiff submitted no affidavits, deposition testimony, or other evidence setting forth specific facts which would show that there was any genuine issue for trial as required by Rule 56(e). Thus, since the issues raised by defendants' motion are purely questions of law, this matter may be appropriately handled through summary judgment.

The undisputed material facts are easily summarized. On or about March 2, 1976, the defendant Chet Adams, in response to a request by the plaintiff, quoted to the plaintiff prices for various items. Plaintiff planned to use this price quote as a basis for formulating its own bid on a mechanical services contract. The plaintiff alleges that it properly notified Chet Adams of its intentions to rely on the price quote. The price quotation was transmitted to the plaintiff orally and included "high pressure plenums" and "sound attenuators." The plaintiff further alleged that Chet Adams' price quote included "low pressure plenums." The price quoted for these items (whether two or all three) was $17,500.00. Complaint, ¶¶ 8–12, 18; Plaintiff's answers to interrogatories, nos. 1, 7.

On or about March 3, 1976, an agent for the plaintiff and Chet Adams had another telephone conversation, during which plaintiff alleges an agent for Chet Adams offered to sell the quoted items, including the high pressure plenums, the sound attenuators and the low pressure plenums, to the

1. Chet Adams and Noise Control specifically deny there was ever a contract between the parties as alleged by the plaintiff. However, for purposes of this motion only, Chet Adams and Noise Control relied on the allegations of the complaint and plaintiff's answers to interrogatories.

**458**

plaintiff at the quoted price if the plaintiff was awarded the mechanical services contract. The plaintiff further alleged that during this conversation, it accepted Chet Adams' alleged offer and thus, an oral purchase contract was created between the parties. Complaint, ¶ 26; Plaintiff's answers to interrogatories, nos. 1, 2, 4, 12, 13, 16.

McDabco was subsequently awarded the mechanical services contract. After it learned that it had been awarded the contract, the plaintiff allegedly attempted to buy the quoted items (i.e. the high pressure plenums, sound attenuators and the low pressure plenums) from Chet Adams at the quoted prices. Chet Adams refused to sell the three items on the ground that the quoted price included only the high pressure plenums and the sound attenuators. The plaintiff alleges that Chet Adams' refusal to supply the three items at the quoted price constitutes a breach of the oral contract of March 3, 1976, and constitutes actionable negligence. Complaint, ¶¶ 13, 14, 24, 26.

Almost six years after the alleged refusal by Chet Adams to sell the quoted items, the plaintiff instituted this action, alleging a cause of action for "actionable negligence," breach of contract, and violation of South Carolina's Unfair Trade Practices Act. Plaintiff subsequently abandoned the Unfair Trade Practices claim. The defendants timely answered the complaint, and served plaintiff with a request for production of documents and interrogatories. Following the return of the request for production and plaintiff's answers to defendants' interrogatories, the defendants filed this motion.

The basis for defendants' motion is that the plaintiff's cause of action for breach of the alleged oral contract of sale is barred by Uniform Commercial Code's Statute of Frauds, Section 36–2–201 of the Code of Laws of South Carolina 1976 Annotated.[2] In regard to plaintiff's cause of action for "actionable negligence," defendants rely on the well accepted doctrine that one cannot circumvent the Statute of Frauds by bring-

ing an action in tort, when the tort action is based primarily on the unenforceable contract. 73 Am.Jur.2d Statute of Frauds § 519 (1964); *Caplan v. Roberts,* 506 F.2d 1039 (9th Cir. 1974).

In response to defendants' motion, plaintiff attempted to circumvent the Statute of Frauds by asserting for the first time a theory of promissory estoppel. It is plaintiff's contention that as a result of certain alleged representations or promises made by the defendants, the defendants are estopped from asserting the Statute of Frauds as a defense to the breach of contract action. Plaintiff does not contest the fact that in the event promissory estoppel is not applicable to the instant fact situation, then the Statute of Frauds bars either of its two causes of action. Thus, there are only three issues before this court as a result of defendants' motion. The first question is whether the plaintiff has properly pled promissory estoppel. The second issue is whether there is any evidence of promissory estoppel. The third issue is whether promissory estoppel can be used to circumvent the Statute of Frauds.

### I. PLAINTIFF FAILED TO ALLEGE PROMISSORY ESTOPPEL

Turning to the first issue, the defendants contend that the plaintiff has not properly alleged promissory estoppel and therefore, cannot now raise this affirmative claim without repleading. After close scrutiny of the complaint, the court is of the opinion that the plaintiff failed to properly allege promissory estoppel. Plaintiff's first cause of action is for "actionable negligence" based on alleged misrepresentations by the defendants. This cause of action is certainly not a claim for promissory estoppel since estoppel is in no way related to negligence.

Plaintiff's second cause of action is clearly couched in terms of "breach of contract." In paragraph 26 of its complaint, plaintiff alleged that defendants' "failure or refusal . . . to so deliver and provide the equipment

---

2. There is no dispute that the U.C.C. applies to this alleged purchase contract.

and material in accordance with such contractual obligation constituted a breach of contract." Additionally, it is obvious from plaintiff's answers to defendants' interrogatories that it was treating its second cause of action as a pure breach of contract action. However, it has been stated that "it would be a mistake to regard an action grounded on promissory estoppel as the equivalent of a breach of contract action." *Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 133 N.W.2d 267, 275 (1965). With this caveat in mind, the court is of the opinion that plaintiff's second cause of action, styled breach of contract, also fails to properly allege an affirmative claim for relief based on promissory estoppel.

Rule 8(a) of the Federal Rules of Civil Procedure provides, *inter alia,* that "a pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Moore's Federal Practice,* paragraph 8.17[1] contains the following interpretation of this rule:

> [T]he general test remains constant: does the statement of the claim contain the required elements stated plainly and succinctly, and does it give fair notice to the opposite party?

The plaintiff's complaint does not plainly and succinctly plead the elements of promissory estoppel nor does it give fair notice by labeling the causes of action as negligence and breach of contract.

## II. PLAINTIFF FAILED TO PRESENT EVIDENCE OF PROMISSORY ESTOPPEL

■ The plaintiff offered no evidence of promissory estoppel, but relied on its complaint in response to the defendants' motion for summary judgment. The plaintiff cannot rely on its pleading in response to a motion for summary judgment, therefore, the court finds the following provision of Rule 56(e) of the Federal Rules of Civil Procedure controlling:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

If the court were to assume that the plaintiff properly pled promissory estoppel, the plaintiff still failed to provide any factual evidence showing a genuine issue for trial.

## III. PLAINTIFF CANNOT USE PROMISSORY ESTOPPEL TO FRUSTRATE LEGISLATIVELY ADOPTED PUBLIC POLICY EMBODIED IN § 36–2–201

■ Even assuming, for purposes of this motion, the plaintiff did properly plead and set forth facts showing promissory estoppel, the court holds, for the reasons set forth below, that this theory cannot be used to circumvent the writing requirements of Section 36–2–201.

South Carolina, like the majority of other states, has enacted the Uniform Commercial Code in some form. Specifically, South Carolina has enacted the U.C.C.'s Statute of Frauds as it applies to the sale of goods. It provides in part:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing. S.C.Code Ann. § 36–2–201 (1976).

This section obviously applies in the instant case, and absent application of the doctrine of promissory estoppel, it renders plaintiff's claims for breach of contract and "actionable negligence" unenforceable.

There are no reported South Carolina decisions which address the issue of whether promissory estoppel can be used to circumvent the writing requirements of Section 36–2–201. However, numerous decisions from other jurisdictions have considered this very question and have generally rejected the argument that promissory estoppel can be used to provide relief from the requirements of the statute. In *C. R. Fedrick, Inc. v. Borg-Warner Corp.,* 552 F.2d 852 (9th Cir. 1977), the Ninth Circuit, applying California law, was confronted with an identical factual situation. In *C. R. Fedrick,* the defendant pump supplier submitted an oral telephone bid in the amount of $450,000 to a contractor for pumps to be used in a construction project. In reliance on the pump supplier's bid, the contractor lowered his original bid by $200,000. After it was awarded the construction contract, the contractor attempted to buy the pumps from the supplier at the quoted price, but the supplier refused to sell.

The Ninth Circuit, in affirming summary judgment for the defendant, held that an oral quotation by a supplier to a general contractor did not constitute an enforceable contract under Section 2–201. In an attempt to circumvent the Statute of Frauds, the plaintiff asserted promissory estoppel as an affirmative claim, alleging that it suffered an "unconscionable injury" since it was forced to purchase pumps from another supplier at an additional cost of $95,903. The court rejected this argument, holding that promissory estoppel could not be used to abrogate the sound public policy principles of U.C.C. Section 2–201.

Numerous jurisdictions follow the rule as set forth in *Fedrick* that promissory estoppel is not an exception to the Statute of Frauds. See *Anderson Construction Co., Inc. v. Lyon Metal Products,* 370 So.2d 935 (Miss.1979); *Cox v. Cox,* 292 Ala. 106, 289 So.2d 609 (1974); *C. G. Campbell & Son, Inc. v. Comdeq Corporation,* 586 S.W.2d 40 (Ky.App.1979); *Del Hayes & Sons, Inc. v. Mitchell,* 304 Minn. 275, 230 N.W.2d 588 (1975); *Farmland Service Coop., Inc. v. Klein,* 196 Neb. 538, 244 N.W.2d 86 (1976); *Lige Dickson Company v. Union Oil of California,* 96 Wash.2d 291, 635 P.2d 103 (Wash. 1981); *Schwedes v. Romain,* 587 P.2d 388 (Mont.1978); *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System,* 432 F.2d 64 (5th Cir. 1970, applying Texas law), *cert. denied,* 401 U.S. 955, 91 S.Ct. 975, 28 L.Ed.2d 239; *Tiffany, Inc. v. W.M.K. Transit Mix, Inc.,* 16 Ariz.App. 415, 493 P.2d 1220, 56 A.L.R.3d 1028 (1972).

One of the most well-researched and authoritative decisions on this subject is *Lige Dickson Co. v. Union Oil of California, supra,* (Supreme Court of Washington, *en banc* ). In *Lige,* the plaintiff brought an action for breach of an oral contract and defendant asserted as a defense the provisions of U.C.C. Section 2–201 (Statute of Frauds). Plaintiff attempted to circumvent this defense by asserting a claim of promissory estoppel. The court rejected plaintiff's claim, providing a well-reasoned and sound explanation of its holding:

Plaintiff's only remedy may be based upon breach of the oral contract. Nonetheless, we must hold that promissory estoppel cannot be used to overcome the statute of frauds in a case which involves the sale of goods.

The Uniform Commercial Code was adopted to regulate commercial dealings. Uniformity among different jurisdictions in decisions concerning commerce was a major motivation behind development of the U.C.C. By so doing, it was hoped that this area of the law would become clearer and disputes would be more readily resolved.

\*     \*     \*     \*     \*     \*

If we were to adopt § 217A [promissory estoppel] as applicable in the context of the sale of goods, we would allow parties to circumvent the U.C.C. [citation omitted]. For example, to prove justifiable reliance (an element of promissory estoppel), the promisee may offer evidence of course of dealing between the parties, as plaintiff did in this case. The Official Comments to RCWA 62A.1–205(4) [S.C.'s § 36–1–205(4) ] state that the statute of frauds "restricts the ac-

tions of the parties, and ... cannot be abrogated by agreement or by a usage of trade." [citation omitted].

Notwithstanding our appreciation of plaintiff's dilemma, we cannot help but foresee increased litigation and confusion as being the necessary result of the eroding of the U.C.C. if § 217A is adopted in this case. We join the other courts which limit the doctrine of promissory estoppel from overcoming a valid defense based on the statute of frauds contained within the Uniform Commercial Code. 635 P.2d at 107.

From the above authorities it is clear that plaintiff cannot avoid the statute of frauds by asserting a claim for promissory estoppel. To hold otherwise would render Section 36–2–201 a nullity. The South Carolina legislature has unequivocally set forth the law that oral contracts are unenforceable unless one of the specific exceptions found in subsection 36–2–201(3) is met. There are sound public policy reasons which underlie passage of this statute. As noted in *C. G. Campbell & Son, Inc. v. Comdeq Corp.*, 586 S.W.2d 40 (Ky.App.1979), the statutory avoidance of § 2–201, contained in § 2–201(3), was as far as the legislature was willing to go in creating exceptions to the statute of frauds and, "... any attempt by the courts to judicially amend this statute which is plain on its face would contravene the separation of powers mandated by the Constitution." 586 S.W.2d at 41.

As noted, there are no decisions from the South Carolina Courts on this question. However, this court is of the opinion that the rule expressed in the above decisions, that promissory estoppel cannot be used to circumvent the Statute of Frauds, applies in the instant case. In fact, this result is required under the express terms of Section 36–2–201 which clearly provides that the Statute of Frauds is to control all sales for goods over $500.00, "except as otherwise provided *in this section*." (emphasis added). Thus, the legislature has provided that the only exceptions to the requirements of a written contract of sale are provided in Sections 36–2–201(2) and (3). Promissory estoppel is not included within these subsections.

In addition to the clearly expressed proviso of Section 36–2–201, there is an additional provision in the U.C.C., the Official Comment to Section 36–1–205(4), which indicates that promissory estoppel cannot be used to avoid the statute. In order to prove justifiable reliance, an element of a claim of promissory estoppel, the plaintiff promisee often needs to offer evidence of trade usage or course of dealing between the parties. In fact, this is exactly what McDabco intended to do. In its complaint, McDabco attempted to allege justifiable reliance in paragraphs 9 and 15:

9. The price quotation committed to Plaintiff by the Defendant Chet Adams Company as agent for the Defendant Noise Control Products was provided to Plaintiff specifically for the purpose of its inclusion within Plaintiff's bid for the mechanical services contract hereinabove stated *in a form and manner regularly utilized by and between professional contractors and suppliers in the mechanical construction field.*

\*　　\*　　\*　　\*　　\*　　\*

15. Acting in its capacity as a professional mechanical contractor and *dealing with the Defendants in a manner customary in the field for gathering information and price quotations for bid purposes,* Plaintiff was entitled to rely on the representations of Defendants, as made by and through their authorized agents and representatives and Plaintiff did rely on such representations as were specifically made by Defendants to Plaintiff. (emphasis added).

Further, during the hearing on defendants' motion, McDabco's attorney specifically stated that the plaintiff intended to introduce evidence as to the custom and manner of taking and using quotations in the construction industry. Such evidence was to be used by the plaintiff in an effort to prove justifiable reliance. This is exactly the type of evidence that the official comments to Section 36–1–205(4) forbid. Those comments specifically provide "that the

Statute of Frauds cannot be abrogated by agreement, or by a usage of trade . . ."

During oral argument, plaintiff urged the court to follow the rule noted in *Tiffany, Inc. v. W.M.K. Transit Mix, Inc., supra,* and the Restatement, Contracts Section 178 Comment f, which provides that promissory estoppel can be used to circumvent the Statute of Frauds when there has been an ancillary promise, contemporaneous with or subsequent to the original contractual promise, to issue a written contract that will satisfy the Statute of Frauds. Several courts have followed this doctrine, particularly *Tiffany, Inc.* and *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement, supra.* In this regard, plaintiff points to a letter dated March 26, 1976, from Eugene Adams of the Chet Adams Company to Larry Yates of McDabco wherein Adams refers to a written quotation that Chet Adams issued or intended to issue, contemporaneous with the oral quotation. It is this letter that plaintiff contends raises an inference that an ancillary promise to comply with the Statute of Frauds was made by a representative of the Chet Adams Company, following the alleged oral agreement.

■ Even if the court were to adopt the view set forth in Comment f to Section 178 of the Restatement, there are a number of fatal flaws in the plaintiff's argument. First, plaintiff never alleged that there was an ancillary promise. This issue was raised for the first time during oral argument. Second, it is obvious from a close review of the March 26th letter, that it can in no way be interpreted as an ancillary promise to reduce a contractual promise to writing. The letter fails to raise even an inference of such an ancillary promise. Third, even if the letter evidences such an ancillary promise, it is obvious that plaintiff never relied on the ancillary promise since McDabco's bid was submitted on March 3, 1976, more than three weeks prior to the date that McDabco received this letter. Thus, this narrow exception to the statute is not available to the plaintiff.

In summary, the court is of the opinion that the plaintiff failed to properly plead and to furnish facts to establish promissory estoppel. However, even assuming that the promissory estoppel issue was properly raised, this doctrine cannot be used to frustrate the important public policy considerations behind Section 36–2–201. Finally, it is clear that there are no genuine issues as to any material fact and the issues raised by defendants' motion are purely questions of law.

IT IS, THEREFORE, ORDERED that defendants are entitled to summary judgment on the ground that the plaintiff's breach of contract action is barred by Section 36–2–201 of the Code of Laws of S.C. 1976 Annotated, which cannot be circumvented by a theory of promissory estoppel or by a theory of actionable negligence.

IT IS SO ORDERED at Columbia, South Carolina, this 17th day of September, 1982.