Gershengorn, J.
Defendants, Prime Communications and Neal Bocian (Bocian), move the Court, pursuant to Mass.R.Civ.P. 50(b), to enter judgment notwithstanding the verdict in their favor on the plaintiffs (Hurwitz) claim for misrepresentation. For the following reasons, the motion is DENIED.
INTRODUCTION
This case was tried before a jury on claims for misrepresentation and for breach of contract. The jury rejected the breach of contract claim because the agreement between the parties was not reduced to a writing which adequately stated the agreement’s terms.[1] The jury ruled in favor of Hurwitz on her claim that Bocian had promised her an ownership interest in Prime Communications, but had no intent to honor that promise. Hurwitz reasonably relied upon this fraudulent misrepresentation and was awarded $600,000 in damages. When reviewing a motion for judgment notwithstanding the verdict, the court must determine whether, weighing the credibility of the witnesses or otherwise considering the weight of the evidence, “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” International Totalizing Systems, Inc. v. PepsiCo, Inc., 29 Mass.App.Ct. 424, 429 (1990), quoting Poirier v. Plymouth, 374 Mass. 206, 212 (1978).
FACTS
In 1980, Hurwitz began her employment at Prime Communications. She was made Vice-President in 1983. From 1982 through 1990, Hurwitz and Bocian were involved in an on-again, off-again affair. In 1985, Bocian agreed to pay Hurwitz compensation, benefits and advantages, including an equal partnership interest in Prime Communications, if Hurwitz agreed to continue to accept major responsibilities and to stay with the company. This agreement was never reduced to writing. Hurwitz contends that Bocian promised that the contract would be reduced to writing after his divorce became final.
From 1985 through 1990, Prime Communications began to suffer financial difficulties. Often, Hurwitz did not draw her salary so that the payroll could be met. Hurwitz gave up approximately $18,000 during this period. When business began to improve, Hurwitz began receiving the same salary and bonus as Bocian. She was also given a piano and a Jaguar.
In January of 1990, Hurwitz ended her relationship with Bocian. Hurwitz, however, wished to continue her employment at Prime Communications and suggested that she and Bocian consult with a therapist in order to preserve their professional relationship. Hurwitz alleged that Bocian made any ongoing professional relationship impossible. She asserted that Bocian verbally and physically abused her and undermined her credibility with business associates. After it became obvious that the professional relationship was doomed, Hurwitz demanded compensation for her one-half equity interest in Prime Communications. Bocian refused and asserted that any oral agreement between the parties is barred by the Statute of Frauds.
At trial, CPA Richard Leighton was called to testify regarding the value of Prime Communications. Leigh-ton estimated the value at approximately $1.2 million. At trial, the following special question was submitted to the jury on the theory of misrepresentation:
Did the defendant, Neal Bocian promise the plaintiff an ownership interest (to make her a shareholder) in Prime Communications, Inc. with no intent to do so or for the purpose of inducing the plaintiff to act *75 or refrain from acting in some way and, in reliance on whole or in part on such a promise, did the plaintiff reasonably act or refrain from doing something that she had a right to do?
In response, the jury answered “yes” and awarded Hurwitz $600,000 in damages.
DISCUSSION
Bocian’s motion for a judgment notwithstanding the verdict has four points:
First, Bocian argues that the tort theory of misrepresentation can not circumvent the Statute of Frauds. Bocian concedes that many jurisdictions, including Massachusetts, have recognized that promissory es-toppel may be a basis to avoid the Statute of Frauds. However, Bocian argues that misrepresentation is fundamentally different from promissory estoppel and should not be recognized as an excuse to the lack of a writing in a contractual relationship.
Second, Bocian argues that even if misrepresentation is recognized as an exception to the Statute of Frauds, it should not be applied under these facts which concern the sale of securities, a transaction subject to the explicit provisions of the Uniform Commercial Code, §8-319.
Third, Bocian alternatively argues that if the lack of a writing is excused and the contract is enforceable, Hurwitz should not be allowed to recover “benefit of the bargain” damages and should be entitled only to her “out-of-pocket” costs.
Fourth, Bocian asserts that as a matter of law, the evidence submitted at trial was insufficient to support a verdict for misrepresentation.
1)The Statute of Fraud Cannot Be Used to Shield Fraudulent Conduct
A) Promissory Estoppel and the Statute of Frauds
Bocian refers the court to case law from approximately ten different jurisdictions which reject the application of promissory estoppel to circumvent the Statute of Frauds. Virtually all of these cases follow the rationale of Dung v. Parker, 52 N.Y. 494 (1873). Quite simply, Dung v. Parker stands for the proposition that if a contract is not reduced to a writing, there can be no recovery, either in contract or tort. Jurisdictions following this rationale reason that to base a cause of action on the mere allegation that an oral promise was made without the intention to perform it would defeat the basic purpose of the Statute of Frauds.
However, the state and federal courts of the Commonwealth have not followed this rationale and have recognized that “in obedience to the demands of a larger public policy, the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties procuring it.” Bates v. Southgate, 308 Mass. 170, 182 (1941). Massachusetts law is well settled that where a party against whom enforcement of an oral contract is sought has made a material misrepresentation, that party may be estopped from raising the Statute of Frauds defense. Frederick v. Conagra, 713 F.Supp. 41, 45 (D.Mass. 1989), citing Greenstein v. Flatley, 19 Mass.App.Ct. 351, 356 (1985); Hoffman v. Optima Systems Inc., 683 F.Supp 865, 869 (D.Mass. 1988), citing Hickey v. Green, 14 Mass.App.Ct. 671 (1982) (holding that the seller of reed estate was bound to her oral contract under the equitable estoppel principles of the Restatement (Second) of Contracts, §129); Goeken v. Kay, 751 F.2d 469, 472-74 (1st Cir. 1985) (affirming district court decision which assumed that Massachusetts law allowed recovery on reasonable reliance on an oral contract notwithstanding the Statute of Frauds); Palandjian v. Pahlavi, 614 F.Supp. 1569, 1581-82 (D.Mass. 1985), affirmed after reconsideration, 808 F.2d 1513 (1st Cir. 1986) (holding that reasonable reliance on an oral promise precluded a Statute of Frauds defense).
In order to establish a claim for promissory estop-pel, the plaintiff must establish:
1) That the promisor made a promise which he reasonably should expect to induce action or forbearance of a definite and substantial character on the part of the promisee.
2) The promise induced such action or forbearance.
3) Injustice can be avoided only by enforcement of the promise.
Loranger v. Constr. Corp. v. E.F. Hauserman Co., 6 Mass.App.Ct. 152, 154 (1978), aff'd, 376 Mass. 757 (1978); Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722, 728 (1974), aff'd, 368 Mass. 811 (1975); Greenstein v. Flatley, 19 Mass.App.Ct. 351, 357 (1985). See Bishop Massachusetts Practice, “Prima Facie Case,” v. 17, ch. 2, §20.
The Restatement (Second) on Contracts describes promissory estoppel as follows:
1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
Restatement (Second) on Contracts, §90. It is therefore clear that the doctrine of promissory estoppel is recognized as an exception to the Statute of Frauds in the Commonwealth.
B) Misrepresentation and the Statute of Frauds
Bocian asserts that even if the court recognizes promissory estoppel as an exception to the Statute of Frauds, here the judgment notwithstanding the verdict should still be granted because Hurwitz failed to plead promissory estoppel at trial, and instead relied on the doctrine of misrepresentation. Bocian argues that the two doctrines are fundamentally different and *76 contends that misrepresentation should not be recognized as an exception to the Statute of Frauds.
An action for the tort of deceit or misrepresentation consists of five elements:
1) Misrepresentation as to a matter of fact.
2) Misrepresentation made with the intention to induce another to act upon it.
3) Misrepresentation made with knowledge of its untruth or was made of a fact susceptible of actual knowledge with recklessness as to its truth or falsehood, or was the utterance of a half truth.
4) Defendant intended that the misrepresentation should be acted upon, and it was acted upon, and
5) Damage resulted directly therefrom.
Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991); International Totalizing Systems v. PepsiCo., 29 Mass.App.Ct. 424, 431 (1990). See Bishop, Mass Practice, “Prima Facie Case” v. 17A, ch. 26, §961.
The Restatement (Second) on Torts describes the elements of misrepresentation as follows:
One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from acting in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.
See Restatement (Second) Torts, §525.
A comparison of the elements of the doctrines of promissory estoppel and misrepresentation reveals that the two doctrines are virtually identical. Both theories require: 1) that the defendant make a promise or a statement of fact intending to induce reasonable reliance; 2) which does in fact induce reasonable reliance; 3) and which results in harm.
Most important, the prima facie elements of misrepresentation include the difficult burden of establishing that the misrepresentation was made with actual knowledge of its untruth. Zimmerman, 31 Mass.App.Ct. at 77; International Totalizing Systems, 29 Mass.App.Ct. at 431. See Bishop, Mass Practice, “Prima Facie Case” v. 17A, ch. 26, §961. Actual knowledge is not required to establish promissory estoppel.
Bocian asserts the doctrines differ in two fundamental aspects. First, promissory estoppel requires a plaintiff to demonstrate that reliance was of a “definite and substantial character.” Bocian argues that the jury did not consider this element in their analysis of the tort of misrepresentation. However, the doctrine of misrepresentation similarly requires that actual damage result directly from the misrepresentation. This requirement ensures that a plaintiffs reliance is of a definite and substantial character and guards against frivolous complaints. In addition, the facts established at trial clearly revealed that Hurwitz had contributed approximately $18,000 to the partnership in reliance on Bocian’s promise that she was his partner. Such reliance cannot be ignored.
Second, Bocian claims that the prima facie elements of promissory estoppel require that the jury determine whether “the injustice could only be avoided by enforcement of the promise.” Following trial, the jury found that Bocian had promised Hurwitz an ownership interest in Prime Communications, Inc. but made the promise with no intent to honor it for the purpose of inducing Hurwitz to rely upon that promise. In other words, the jury concluded that Bocian had deliberately and intentionally misled Hurwitz to believe that she was a partner in order to induce her to remain with the company. Under facts where the defendant has deliberately engaged in fraudulent conduct, enforcement of the promise is justified. See Chamberlayne School v. Banker, 30 Mass.App.Ct. 346 (1991) (benefit of bargain is appropriate remedy in deceit cases); see Michael B. Bogdanow, Massachusetts Tort Damages, Intentional Torts, §10.29.
For the foregoing reasons, the court rejects defendant’s assertion that the differences between the doctrine of misrepresentation should not be recognized as an exception to the Statute of Frauds.
2) Promissory Estoppel or Misrepresentation are Applicable to UCC 8-319
Bocian next argues that even if promissory estoppel or misrepresentation can be applied to the general Statute of Frauds, it should not be applicable to a claim governed by UCC §8-319. Bocian argues that §8-319 represents a thoughtful attempt of the legislature to balance the interests of all parties. Bocian’s argument is well stated in McDabco v. Chet Adams Company, 548 F.Supp. 456, 460 (D.S.C. 1982), quoting Lige Dickson Co. v. Union Oil of California, 96 Wash.2d 291 (1981), where the court refused to recognize promissory estoppel as a means to avoid a UCC Statute of Frauds and stated that:
The Uniform Commercial Code was adopted to regulate commercial dealings. Uniformity among different jurisdictions in decisions concerning commerce was a major motivation behind the development of the UCC. By so doing, it was hoped that this area of the law would become clearer and disputes would be more readily resolved.
If we were to adopt promissory estoppel as applicable in the context of the sale of goods, we would allow parties to circumvent the UCC.
The South Carolina legislature has unequivocally set forth the law that oral contracts are unenforceable unless one of the specific exceptions to 2-201(3) is met.
Any attempts by the court to judicially amend this statute which is plain on its face would contravene the separation of powers mandated by the constitution.
*77 This argument, essentially advocating for “judicial restraint,” is contrary to Massachusetts law and the express provisions of the UCC.
Precedent indicating that the Uniform Commercial Code is subject to promissory estoppel in Massachusetts is well established. In Schinkel v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41, 48 (1991), the plaintiff alleged that the defendant promised to sell him shares of a corporation. There was no writing between the parties sufficient to satisfy the Statute of Frauds. Id. On appeal, the court held that the case should not have been dismissed as “allegations in the complaint were sufficient to state a claim of fraud based on a false statement of a defendant’s present intention to do a future act.” Id. The court cited with approval Celluci v. Sun Oil Co., 2 Mass.App.Ct. 722, 727-30 (1974), aff'd, 368 Mass. 811 (1975), which firmly recognized that promissory estoppel can be used to circumvent the Statute of Frauds. This precedent was followed in Pitts v. Halifax, 19 Mass.App.Ct. 525, 536 (1985), where the court applied promissory estoppel to prevent the plaintiff from invalidating an agreement for the sale of securities. Similarly, the Massachusetts District Court in Evans v. Certified Engineering & Testing Co., Inc., 834 F.Supp. 488, 496 (1993), also applied promissory estoppel to a sale of securities. There the court stated:
Massachusetts law recognizes that actions taken in reliance upon a material misrepresentation may estop a party from raising a statute of frauds defense. G.L.c. 259, §1, does not, as a matter of law, bar enforcement of... an oral contract inasmuch as the employee reasonably relied to his detriment. Nor absent contrary authority ... , is the estoppel doctrine inapplicable to the statute of frauds contained in Section 8-319.
Bocian’s argument is also inapposite to the text of the UCC. G.L.c. 106, §1-103 explicitly provides:
Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.
(Emphasis added.)
In reference to an identical provision in the Iowa Uniform Commercial Code, the Iowa Supreme Court reasoned that the exceptions to the Statute of Frauds are definitional and were not meant to displace equitable and legal principles otherwise applicable to contract actions. The court reasoned that:
[I]f 2-201 were construed as displacing principles preserved in 1-103, it would mean that an oral contract coming within its terms would be unenforceable despite fraud, deceit, misrepresentation, dishonesty or any other form of unconscionable conduct by the party relying in the statute. No court has taken such an extreme position. Nor would we be justified in doing so. Despite differences relating to the availability of the estoppel defense, courts uniformly hold that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme.
Warder & Lee Elevator, Inc. v. Britten, 274 N.W.2d 339, 342 (Iowa 1979).
Analogizing this argument to the facts of the present case leads the court similarly to conclude that UCC §8-319 does not displace equitable principles such as promissory estoppel or misrepresentation.
3) Where an Injury Results From an Intentional Fraud, the Appropriate Remedy is the Benefit of the Bargain
At trial, Hurwitz was awarded $600,000 in damages, or one-half of the value of Prime Communications as established at trial by expert testimony. Bocian argues that Hurwitz recovered the “benefit of the bargain" damages. That is, Hurwitz was awarded contract damages although her action was based upon a tort claim. Bocian contends that Hurwitz is only entitled to her “out-of-pocket” damages, which would include the $18,000 in salary that Hurwitz surrendered in reliance upon Bocian’s promise and any other damages she can prove that flow from Bocian’s misrepresentations.
Under the “benefit of the bargain” rule, the plaintiff is entitled to the difference between the value of what is received and the actual value of what would have been received if the representations had been true. Rice v. Price, 340 Mass. 502, 507 (1960). The “benefit of the bargain” is a contract damage theory which has been extended to fraud actions, and may be modified or supplemented to prevent injustice. Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982); Rice, 340 Mass. at 509. “Benefit of the bargain” damages are only available where the plaintiff is able to establish damages with reasonable certainty. Rice, 340 Mass. at 508. In cases of deceit, there is a public policy rationale for allowing plaintiffs to recover the difference between actual value and promised value. An intentionally wrongdoing defendant should not have the assurance that his misdeeds will cost him no more than what he receives from his victim. Anzalone v. Strand, 14 Mass.App.Ct. 45, 48 at note 2 (1982).
The “out-of-pocket” rule is a standard tort damage theory which seeks to compensate the injured party for his actual out-of-pocket losses. If the plaintiff is unable to establish “benefit of the bargain” damages with reasonable certainty, she may recover “out-of-pocket” damages (the difference between what she gave up and what she received). Rice, 340 Mass. at 508; Danca 385 Mass. at 8. See, Michael B. *78 Bogdanow, Massachusetts Tort Damages, Intentional Torts, §10.29.
Case law In Massachusetts draws a distinction between intentional and unintentional misrepresentations. If the misrepresentation is intentional, then the measure of damages follows the “benefit of the bargain” rule. Chamberlayne School v. Banker, 30 Mass.App.Ct. 346, 355 (1991). However, where a misrepresentation was found to be unintentional, the appropriate remedy is out-of-pocket damages. Anzalone v. Strand, 14 Mass.App.Ct. 45, 49 (1982). See, Michael B. Bogdanow, Massachusetts Tort Damages, Intentional Torts, §10.29.
Here, the jury unequivocally found that Bocian’s misrepresentations to Hurwitz were intentional. Where a misrepresentation is intentional, the appropriate measure of damages is the “benefit of the bargain.” In addition, the damages awarded Hurwitz can be established with reasonable certainty by looking to the value of Prime Communications. If Hurwitz received what she was promised, she would have obtained one-half of the stock in Prime Communications. Since Prime was valued at 1.2 million, the award to Hurwitz of $600,000 was established with reasonable certainty.
4) The Jury’s Verdict Was Based Upon Sufficient Evidence
The standard of review to be used on a motion for judgment notwithstanding the verdict is the same as that on a motion for a directed verdict. International Totalizing Systems, Inc. v. PepsiCo, Inc., 29 Mass.App.Ct. 424, 429 (1990), quoting D’Annolfo v. Stoneham Hous. Authy., 357 Mass. 650, 657 (1978). In reviewing the grant of a judgment notwithstanding the verdict, the court must determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Id. The inferences must be reasonable and must be based on probabilities rather than possibilities and may not be the result of mere speculation and conjecture. Id. at 430.
The court has reviewed all the evidence in this case and concludes that there was sufficient evidence for the jury to find that Bocian made an intentional misrepresentation to Hurwitz, upon which Hurwitz reasonably relied to her detriment.
CONCLUSION
The jury found that Neal Bocian intentionally and fraudulently induced Heidi Hurwitz to remain at Prime Communications by promising her that she would have an ownership interest in the company. The agreement was not adequately reduced to a writing. Bocian had no intent to fulfill this promise at the time it was made. Hurwitz relied upon this promise to her detriment when she gave up approximately $18,000 in salary so that Prime Communications could make payroll. Her reliance was induced by Bocian’s promise. In Massachusetts, the failure to reduce an agreement to writing can be excused if the plaintiff can establish promissory estoppel. Here, Hurwitz failed to plead the theory of promissory estoppel at trial and instead relied upon the doctrine of misrepresentation. Although misrepresentation has not been explicitly recognized as an exception to the Statute of Frauds, this court holds that Hurwitz is still entitled to damages. The doctrines of promissory estoppel and misrepresentation are very similar. Misrepresentation, in fact, includes an intent element that is far more burdensome than that which is required to establish promissory estoppel. The fact that the agreement between the parties concerned the sale of securities is of little consequence since the doctrine of promissory estoppel is applicable to provisions of the UCC. Finally, Hurwitz is entitled to the “benefit of the bargain” damages because she was the victim of an intentional fraud.
ORDER
For the foregoing reasons, the Defendant’s Motion for Judgment Notwithstanding the Verdict is DENIED.

 Hurwitz was relying on a tape recorded phone message to satisfy the statute of frauds.