**Paul HOFFMANN and Camille Hoffmann, Plaintiffs,**

v.

**Mary BOONE d/b/a Mary Boone Gallery, Defendant.**

No. 88 Civ. 6993 (MBM).

United States District Court, S.D. New York.

March 15, 1989.

Michael S. Press, Whitman & Ransom, New York City, Steven H. Hoeft, McDermott, Will & Emery, Chicago, Ill., for plaintiffs.

Blake Perkins, Charles E. Boulbol, Richards & O'Neil, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs, Paul and Camille Hoffmann, filed this lawsuit to obtain a work of contemporary art, Brice Marden's "Grey # 1," which they claim defendant Mary Boone, owner of a New York art gallery bearing her name, agreed to sell for $120,000 in April 1988. Alternatively, they seek compensation for defendant's failure to deliver the painting. Defendant now moves to dismiss the complaint, asserting that the alleged oral contract is barred by the statute of frauds. Plaintiffs filed two affidavits with their reply papers and asked this court to convert the motion to one for summary judgment. Fed.R.Civ.P. 56. As defendant filed an affidavit herself on this motion, plaintiffs have specifically requested that the motion be for summary judgment, both parties were informed by the court in its order dated January 30, 1989 that the motion would be converted into one for summary judgment and neither side objected to conversion, there is no possible prejudice from my doing so. Furthermore, plaintiffs were afforded full discovery relevant to whether defendant had any writing sufficient to constitute an agreement. Plaintiffs found no such writing.[1] For the reasons stated below, defendant's motion is granted.

### I.

Other than agreeing that no written contract exists, the parties concur on few of the specifics surrounding the alleged oral contract. Mary Boone states that, at an exhibition of Marden's works mounted by her gallery, Paul Hoffmann approached her and asked whether "Grey # 1" was for sale. Boone quoted a price of $125,000. Boone Aff. at ¶ 5. According to her, Hoffmann "neither offered to purchase 'Grey # 1' for $125,000 nor did I agree to sell 'Grey # 1' to Hoffmann at any price. At most, Mr. Hoffmann and I discussed entering into a sales contract but no specific terms were agreed on." Boone Aff. at ¶ 6. Boone further avers that her gallery ordinarily sends an invoice after an agreement is made; no such invoice exists here. Finally, the painting remained on display for the remainder of the exhibit.

---

1. Plaintiffs' request for further document production of defendant's contracts for sales of other paintings contained in their letter to the court dated March 14 is denied as it could not possibly yield proof of a written agreement relating to this transaction necessary to satisfy the statute of frauds. Any other agreement would be irrelevant to the dispute at hand. *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511–12 (2d Cir.1989).

Paul Hoffmann's version of the events, needless to say, is very different. Hoffmann claims he came at defendant's request to view the exhibition before its opening. The Hoffmanns in the past had purchased 16 paintings from the gallery at a total price of $500,000, including a Marden —all pursuant to oral agreements. Hoffmann Aff. at ¶ 9. On April 7, Hoffmann flew to New York from Florida. Hoffmann Aff. at ¶ 4. At the gallery, Hoffmann asked defendant the price for "Grey # 1;" defendant quoted a price of $120,000. Hoffmann then placed a "reserve" on the painting ensuring that defendant would not sell the painting without contacting him. Hoffmann Aff. at ¶ 5. Hoffmann told defendant that he needed approval from his wife and would call the gallery on April 9. Back in Florida, he arranged to have his wife see the painting. On April 15, he and his wife met defendant at the gallery. Having secured his wife's approval, Hoffmann told defendant that he wanted the painting; defendant agreed to sell it. Hoffmann Aff. at ¶ 6. However, according to Hoffmann, "Ms. Boone later expressed concern that 'Grey # 1' was similar to the Marden painting which we had purchased from her in 1987 and suggested that we wait until the next exhibit of Marden's work to purchase another painting." Hoffmann Aff. at ¶ 6. Defendant also told Mrs. Hoffmann that their purchase "was creating problems for her with two of the Gallery's other customers who were also interested in purchasing Marden paintings from this Exhibit. She said that she had told these two customers that they could not purchase paintings from this Exhibit because they had purchased paintings from the previous Marden exhibit." Hoffmann Aff. at ¶ 7. According to Hoffmann, however, defendant confirmed later that " 'Grey # 1' was ours." Hoffmann Aff. at ¶ 8.

Several days after the April 15 meeting, defendant called Hoffmann and told him that she and Marden felt a different painting, "Blue," would be more appropriate for Hoffmann's collection. Hoffmann Aff. at ¶ 10. Hoffmann "requested that [defendant] sent [sic] transparencies of both paintings to me for review." Id. After looking at the transparencies, the Hoffmanns decided they preferred "Grey # 1" and so informed defendant. Hoffmann Aff. at ¶ 11. On May 3, Mr. Hoffmann tried unsuccessfully to meet with defendant to arrange to ship the painting, but received no response. Hoffmann Aff. at ¶¶ 13, 14.

## II.

■ Both sides agree that this alleged oral contract is governed by the Uniform Commercial Code (UCC), as enacted into law by the New York legislature, because it involves the sale of goods at a price in excess of $500. Defendant contends that the statute of frauds, UCC § 2–201(1) (McKinney 1986), bars enforcement of the oral agreement:

> (1) Except as otherwise provided in this section a contract for the sale of goods at a price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract has been made between the parties and signed by the party against whom enforcement is sought....

Plaintiffs assert the applicability of only one of the UCC's exceptions to the writing requirement: an oral contract is enforceable if the party against whom enforcement is sought admits in his court pleadings or testimony that the contract was made. UCC § 2–201(3)(b). Defendant, however, has filed an affidavit explicitly averring that no agreement was entered into. Judge Posner, faced with the same situation in *DF Activities Corp. v. Brown*, 851 F.2d 920, 922 (7th Cir.1988), held that a plaintiff cannot survive summary judgment by contending that the defendant might change her tune at trial or at a deposition and admit that an oral agreement was in fact made. *See also Boylan v. G.L. Morrow Co.*, 63 N.Y.2d 616, 618, 468 N.E.2d 681, 682, 479 N.Y.S.2d 499, 500 (1984). I find Judge Posner's view compelling and adopt it.

Plaintiffs also contend that defendant is barred by the doctrine of promissory estoppel, Restatement of Contracts Second,

§ 217A, from relying on the statute of frauds. A threshold question is whether New York recognizes estoppel in UCC cases. A number of state courts have ruled that estoppel principles are inapplicable in contracts governed by the UCC because, otherwise, the explicit exceptions to the writing requirement, which exceptions appear in § 2–201, would be undermined. *See McDabco, Inc. v. Chet Adams Co.*, 548 F.Supp. 456, 460 (D.S.C.1982) (collecting cases). Other jurisdictions allow promissory estoppel to prevent the statute of frauds from being used as an instrument of fraud. *See Northwest Potato Sales, Inc., v. Beck*, 208 Mont. 310, 678 P.2d 1138 (1984); *Potter v. Hatter Farms, Inc.*, 56 Or.App. 254, 641 P.2d 628 (1982); A. Squillante & J. Fonseca, *Williston on Sales*, §§ 3–1, 14–9 (4th Ed.1974) (1988 Supp.) ("[C]ourts are split on this point"); J. White & R. Summers, *Uniform Commercial Code*, § 2–6 (1980) (arguing that UCC § 1–103 preserves common law estoppel principles).

■ Although the New York Court of Appeals has yet to address this issue, several appellate and trial court decisions have simply applied estoppel principles to UCC actions without acknowledging that such application is itself a matter of dispute. *See Country–Wide Leasing Corp. v. Subaru of America, Inc.*, 133 A.D.2d 735, 520 N.Y.S.2d 24, 25 (2d Dep't 1987) (sale of car dealership), *appeal denied*, 70 N.Y.2d 615, 521 N.E.2d 443, 526 N.Y.S.2d 436 (1988); *Swerdloff v. Mobil Oil Corp.*, 74 A.D.2d 258, 427 N.Y.S.2d 266 (2d Dep't) (sale of gas dealership), *appeal denied*, 50 N.Y.2d 913, 409 N.E.2d 995, 431 N.Y.S.2d 523 (1980); *Edward Joy Co. v. Noise Control Prods., Inc.*, 111 Misc.2d 64, 443 N.Y.S.2d 361, 362 (N.Y.Sup.Ct.1981) (subcontractor bid). In the absence of contrary state court precedent, federal courts applying New York UCC law have assumed that estoppel principles are applicable to UCC-governed contracts. *See Intsel Corp. v. Dereve & Co.*, 80 Civ. 1209 (PNL) slip op. at 7 (S.D.N.Y. April 7, 1981) (sale of cobalt); *United States v. Consolidated Edison Co. of N.Y.*, 452 F.Supp. 638 (S.D.N.Y.1977) (sale of electricity), *modified on other grounds*, 580 F.2d 1122 (2d Cir.1978). Un-

less and until the New York Court of Appeals rules otherwise, I shall follow the decisions of the intermediate courts, *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967), and hold that estoppel principles are applicable to UCC contracts, a result that accords generally with the UCC's stated goal of preserving common law principles of equity like promissory estoppel. UCC § 1–103.

The elements of promissory estoppel in New York are (1) a clear and unambiguous promise, *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir.1988); (2) reasonable and foreseeable reliance on that promise, *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984); and (3) an unconscionable injury, *Swerdloff*, 427 N.Y.S.2d at 269. Plaintiffs contend that all their previous agreements with defendant were never reduced to writing (Hoffmann Aff. at ¶ 9), thus satisfying the reliance requirement at this stage of the pleadings.

Plaintiffs also allege that defendant made a clear promise, *see* Hoffmann Aff. at ¶ 8, although Hoffmann's own account of his actions belies somewhat his contention that a clear and unambiguous promise was made. If he believed that he had already purchased Grey # 1, one would imagine that he would reject outright defendant's suggestion that he consider a different painting instead. However, because defendant might conceivably guarantee that one painting was Hoffmann's while still offering him the chance to purchase another in its place, I find that plaintiffs have adduced sufficient facts at this stage to suggest a clear and unambiguous promise.

■ Plaintiffs claim several injuries to meet the last requirement necessary to make out an estoppel—unconscionable injury. First, plaintiffs travelled to New York from Florida three times in order to settle the contract. Hoffmann Aff. at 4, 6. Second, plaintiffs included the painting in listings for a planned exhibition of their collec-

tion at Chicago's Museum of Contemporary Art in December 1988. Hoffmann Aff. at ¶ 12. Finally, plaintiffs aver that Grey # 1's "special characteristics led us to purchase this particular painting and not to purchase other unsold Marden works which were part of the Exhibit at the Gallery or to wait until the next Marden exhibition to purchase a Marden painting." Hoffmann Aff. at ¶ 15.

New York courts, however, do not regard such injuries as unconscionable, even assuming *arguendo* that they are all traceable to the alleged promise. Thus, "[a] change of job or residence ... by itself is not sufficient to call promissory estoppel into play...." *Swerdloff,* 427 N.Y.S.2d at 270. Foregoing other business opportunities similarly is not enough. *Id.* Nor is a claim that a plaintiff worked "endless hours" in the expectation of a dealership sufficient to invoke estoppel. *Id. See also Country–Wide Leasing,* 520 N.Y.S.2d at 25 ("[T]he mere failure to obtain an uncertain prospective benefit does not rise to a sufficient level of unconscionability to warrant the application of the doctrine of promissory estoppel.") Plaintiffs' failure to purchase another Marden and their embarrassment in connection with the show at the Chicago museum are nothing more than part of the usual disappointment that attends a failed deal.

There is simply no evidence here that plaintiffs expended significant resources in reliance on the agreement. *Compare Buddman Distribs., Inc. v. Labatt Importers, Inc.,* 91 A.D.2d 838, 458 N.Y.S.2d 395, 396 (4th Dep't 1982) (complaint stated that plaintiff purchased vans and trailers and leased warehouse space in reliance on contract). Two of the three trips to New York—the only out-of-pocket expenses plaintiffs have shown—were made before plaintiffs claim an agreement was reached. Those trips would have been made whether or not the contract was actually entered into. Granting plaintiffs every conceivable inference in their favor, as I must on a motion for summary judgment, they have shown only two instances of injury in any form. Mr. Hoffmann's trip to New York to visit the gallery on May 3 (Hoffmann Aff.

at ¶ 13), to the extent that Hoffmann travelled solely to meet with defendant, and any possible costs involved in reprinting the catalog for plaintiffs' showing at the Chicago museum, to the extent that Hoffmann rather than the museum paid for the catalog, are minor and thus insufficient without more to meet New York's requirement of an *unconscionable* injury. That this alleged deal involved art rather than vans and trailers, and therefore engaged esthetic and perhaps egoistic considerations in addition to crass economic ones, is legally irrelevant in my view.

Plaintiffs argue that summary judgment at this point is improper because injury is a question of fact for trial, citing a New York case, *Buddman Distribs.,* 458 N.Y.S. 2d at 397. As shown above, the plaintiff in *Buddman Distribs.* had evidence of substantial injury suffered in reliance on defendant's agreement. Here, on the contrary, plaintiffs have been unable to show any unconscionable injury suffered in reliance on defendant's purported agreement to sell the painting. Moreover, the standard for summary judgment is a procedural issue; therefore, this court must apply federal, not state, law under *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). To grant a motion for summary judgment under Fed.R.Civ.P. 56, a court must find that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law because the non-moving party has failed to make a sufficient showing of an essential element of its case as to which it has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiffs cannot await trial to present their evidence, but must show facts demonstrating a genuine issue of fact as to unconscionable injury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986); *Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 61 (2d Cir. 1986) (summary judgment appropriate for claim which fails to present sufficient grounds for assertion of equitable estoppel). Here, plaintiffs have not shown any

unconscionable injury induced by their reliance on defendant's promise which could arguably come within New York's standard for estoppel.

Accordingly, summary judgment for defendant is appropriate. The complaint is dismissed.

SO ORDERED.