**MARVIN INC. d/b/a Pascal De Sarthe Fine Art, Plaintiff,**

v.

**Andrew W. ALBSTEIN and "John Doe", Defendants.**

**No. 04 Civ. 1567(DAB).**

United States District Court,
S.D. New York.

Jan. 19, 2005.

Paul Howard Levinson, McLaughlin And Stern, LLP, New York, NY, for plaintiff.

Sean E. O'Donnell, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York, NY, for defendants.

## MEMORANDUM & ORDER

BATTS, District Judge.

Before the Court is Defendant Andrew W. Albstein's ("A.Albstein") Motion to Dismiss the above action.

On the motion to dismiss the breach of contract and specific performance claims, Plaintiff and Defendant have submitted materials in addition to the pleadings. The Court has included these materials in its consideration of this case and will treat the motion to dismiss the breach of contract and specific performance claims as a limited motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

For the reasons that follow, Defendant's motion is GRANTED and the case is DISMISSED.

## I. BACKGROUND

Plaintiff Marvin Inc. d/b/a Pascal de Sarthe Fine Art ("Marvin Inc."), is an art dealer, incorporated under the laws of Arizona, which is also its principal place of business. Defendant Andrew Albstein resides in New York, New York. (Am. Compl.¶¶ 2–3.)

At the center of this dispute between the Parties is a Painting ("the Painting"), described minimally as "a superior work

from a highly desired period" in a "well-known" artist's oeuvre, so as to "minimize the potential damage to the Painting's reputation and value." (Id.¶¶ 7–8.) It became known to Plaintiff that Iris W. Albstein ("I.Albstein") was the representative of the owner of the Painting. (Id.¶¶ 12, 14–15.) I. Albstein is the sister and law partner of A. Albstein, the owner of the Painting. (Id.¶ 16.)

Based upon this information, Mr. de Sarthe, President of Marvin Inc., contacted I. Albstein and began discussions for purchase of the Painting. Drafts of a proposed written contract were passed back and forth between the Parties. According to both Parties, changes were made to the warranty of title, indemnification and confidentiality provisions of the contract.

Parties agree that there was no final written contract for the purchase of the Painting. However, Plaintiff alleges that on or about January 20, 2004, after Mr. de Sarthe inspected the Painting, I. Albstein orally agreed to sell Plaintiff the Painting for $250,000. (Id.¶¶ 19–20.) Based upon this agreement between the Parties, Plaintiff states that it agreed to sell the Painting to one of its clients for an amount higher than $250,000. (Id.¶ 27.) Plaintiff alleges that Defendant knew of this agreement to resell the Painting.

Plaintiff then attempted to obtain written wire instructions from I. Albstein but I. Albstein "offered a variety of excuses and pretexts" for failing to do so, and on February 19, 2004, communicated to Plaintiff's attorney that the purchase price of the Painting was $300,000, not $250,000. (Id.¶¶ 31, 33.)

Mr. de Sarthe placed several telephone calls to I. Albstein, which he recorded. Plaintiff highlights one particular conversation that demonstrates, according to Plaintiff, that I. Albstein "repeatedly acknowledged the Agreement and the commitment to sell the Painting to Mr. [de] Sarthe for $250,000." (Id.¶ 35.) That conversation, held on February 19, 2004 is excerpted below: [1]

de Sarthe: We did have an agreement for $250,000 to purchase [the Painting] and I got a call from Mr. Stern telling me now that you want 50,000 more.

Albstein: Right. No, that's—that's correct, because of some other things that had happened. I—I—I wanted him to discuss it with you and instead I got back a barrage of threats . . .

de Sarthe: I wanted to call you because, I mean, we did have an agreement and a price that we have agreed to. The only thing I was waiting for was the bank information and a signed contract.

Albstein: That's right. And a signed contract. And so what—my brother got some additional information and had asked me to open this up for discussion and instead what I received were absolute inappropriate threats.

de Sarthe: I don't know. Mr. Stern was not authorized to—I just found out what you are saying. . . . In this case, we had an agreement. Somebody changed the terms of the agreement at the last minute.

[ . . . ]

Albstein: If you remember when we first spoke, you—we had talked about 300,0000.

de Sarthe: Yes, but it -

Albstein: I know it changed afterward. I am not saying no.

---

1. The transcript of the telephone conversation is provided by Plaintiff. Defendants have not submitted any objection to the transcript.

de Sarthe: You accepted $250,000.

Albstein: Right. I understand that, but the threats were really unnecessary. I was forced to convey them -

[ ... ]

de Sarthe: You know we had an agreement at $250,000.

Albstein: Right.... Unfortunately I guess or fortunately in time something else comes up in between, and that's why you know something—in—in—you know, you're not bound until something is in—is in writing, um, which I am sure he -

[ ... ]

de Sarthe: You are the one who told me "Will you pay 250,000?" and I said yes, and we have agreed -

Albstein: Right.

de Sarthe:—to the price.

Albstein: I will convey this to my brother and, um, you can call me back later. I will call him back....

(Pl.'s Mem. of Law at Ex. E.)

On February 20, 2004, I. Albstein informed Mr. de Sarthe that the Painting would not be sold to Plaintiff. (Id.¶ 36.)

Plaintiff has included Defendant "John Doe" in this action, based on the belief that if A. Albstein is not the true and lawful owner of the Painting, then the lawful owner is John Doe. (Id.¶ 40.) In support of this assertion, Plaintiff points to the fact that I. Albstein did not insert the name and address of the Seller of the Painting in the appropriate spaces in the written contract, and that it was not until February 4, 2004 that I. Albstein advised Plaintiff's counsel that the Seller was not a corporation but her brother A. Albstein. (Id.¶¶ 23, 26.)

Plaintiff filed this action against Defendants on February 24, 2004, requesting specific performance and damages for breach of contract. Plaintiff filed an Amended Complaint ("Amended Complaint") on March 23, 2004, adding claims of promissory estoppel and fraud. Defendant filed its Motion to Dismiss the Amended Complaint on May 11, 2004.

## II. DISCUSSION

Defendant moves to dismiss the Amended Complaint on the ground that the claims are barred by the Statute of Frauds, and for failure to state a claim.

As the claims in this diversity case arise out of common law, New York substantive law applies.[2] *See Philips Credit Corp. v. Regent Health Group*, 953 F.Supp. 482, 501 (S.D.N.Y.1997) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *deBruyne v. Clay*, No. 94 Civ. 4707, 1997 WL 471039, at *4 (S.D.N.Y. Aug.18, 1997) (same).

### A. Legal Standard for Motion to Dismiss

In a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995) (citations omitted). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119 (2d Cir.1991)).

**2.** The Parties refer only to New York contract law in their submissions, making a discussion of choice-of-law principles unnecessary.

For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... as well as a public disclosure documents required by law, ... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the lawsuit." *Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir.2000) (citations omitted).

**B. Breach of Contract and Specific Performance**

**1. Conversion to a Summary Judgment Motion**

According to Rule 12(b)(6), if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56."

The Second Circuit has stated that "conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form." *In re G. & A Books, Inc.,* 770 F.2d 288, 295 (1985). The "essential inquiry in a conversion to a summary judgment motion is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the proceedings." *Id.; see also Capitol Records, Inc. v. Naxos of America, Inc.,* 262 F.Supp.2d 204, 207 (2d Cir.2003). In fact, even if only the moving party submitted extrinsic evidence, such as affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted. *See In re G. & A. Books, Inc.,* 770 F.2d 288 at 295; *Cook v. Hirschberg,* 258 F.2d 56, 57–58 (2d Cir.

1958) (filing of affidavits by defendants with their motion to dismiss both converted the motion into one for summary judgment and put plaintiffs on notice of their obligation to disclose merits of their case).

In this case, Defendant A. Albstein submitted one affidavit by Iris Albstein in support of his motion to dismiss. Plaintiff responded by submitting three affidavits, and exhibits that include material considered incorporated into the Amended Complaint and others that are not.

The issue at hand, whether the Statute of Frauds defense is applicable, hinges on whether this case falls under the "Judicial Admissions" exception to the Statute of Frauds defense. The affidavits of I. Albstein, Mr. de Sarthe, and the transcripts of the telephone calls fully explore this issue.

■ The Court finds that Plaintiff has not been "taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings" on the issue of the Statute of Frauds defense, and converts the motion to dismiss the breach of contract and specific performance claims into a motion for summary judgment. *See e.g., Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 592 (2d Cir.1993) (court found no error in district court's conversion of motion to dismiss into one of summary judgment where plaintiff supplemented opposition papers with material on issue of exhaustion).

**2. Legal Standard for Summary Judgment Motion**

A district court should grant summary judgment when there is no "genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107 (2d Cir.2000). Genuine issues of fact cannot be created by mere conclusory allegations; summary

judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." *Heublein v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (citing *Matsushita Elec. Industr. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A court must always "resolv[e] ambiguities and draw [ ] reasonable inferences against the moving party," *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986); however, the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Id.* at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must, 'set forth specific facts showing that there is a genuine issue for trial.'" *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986) (quoting Fed.R.Civ.P. 56(e)). Unsupported allegations in the pleadings cannot create a material issue of fact. *Weinstock v. Columbia University,* 224 F.3d 33, 41 (2d Cir.2000).

### 3. Statute of Frauds

Under § 2–201(1) of the New York Uniform Commercial Code, "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action of defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."

However, there are several exceptions to the Statute of Frauds defense. The exception applicable to this matter, also known as the "Judicial Admissions" exception, is contained in § 2–201(3) of the New York Uniform Commercial Code. Section 2–201(3)(b) states that even if there is no written contract, a contract is nonetheless enforceable "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made."

Courts have allowed actions to go forward despite the assertion of a Statute of Frauds defense if it appears that the Judicial Admissions exception may apply. *See Consumers Subscription Center, Inc. v. Web Letter Co.,* 609 F.Supp. 1134, 1140 (E.D.N.Y.1985) (district court denied motion for summary judgment because it could not determine whether defendant had made such a judicial admission and because defendant had not yet been deposed); *Bentley v. ASM Communications, Inc.,* No. 91 Civ. 0086, 1991 WL 105220, at *6 (S.D.N.Y. June 11, 1991), *reargument denied,* No. 91 Civ. 0086, 1992 WL 18802 (S.D.N.Y. Jan.28, 1992) (denying motion to dismiss pending answer to complaint confirming or denying plaintiff's allegations and stating that "When there is a bare motion to dismiss or an answer with no evidentiary materials, the possibility remains a live one that, if asked under oath whether a contract had been made, the defendant would admit that it had been.").

However, if there has been an opportunity for an admission, courts have found the Judicial Admissions exception inapplicable and dismissed the action as barred by the Statute of Frauds. *See Hoffmann v. Boone,* 708 F.Supp. 78, 80 (S.D.N.Y. 1989) (holding that UCC § 2–201(3)(b) did not render a contract enforceable because the defendant had filed an affidavit stating that no agreement had been entered into).

Even after denying the motion to dismiss because of the Judicial Admissions exception, the court in *Bentley v. ASM Communications* noted that where a defendant has denied the existence of a contract by affidavit or in an answer, a plaintiff cannot defeat a motion to dismiss. 1991 WL 105220, at *6 (citing *DF Activities Corp. v. Brown,* 851 F.2d 920, 922 (7th Cir.1988) (affirming dismissal of action where defendant submitted an affidavit denying existence of contract by stating that "a plaintiff in a suit on a contract within the statute of frauds should not be allowed to resist a motion to dismiss, backed by an affidavit that the defendant denies the contract was made, by arguing that his luck may improve in discovery.")). Where a Defendant "has filed an affidavit explicitly averring that no agreement was entered into ... a plaintiff cannot survive summary judgment by contending that the defendant might change her tune at trial or at a deposition and admit that an oral agreement was in fact made." *Hoffmann v. Boone,* 708 F.Supp. at 80.

Plaintiff relies upon one particular telephone conversation with Iris Albstein that took place on February 19, 2004, as the basis for asserting that the Statute of Frauds defense *does not apply in this case.* In the conversation, Plaintiff claims I. Albstein told Mr. de Sarthe that there was an agreement to purchase the Painting for $250,000.

I. Albstein has submitted an affidavit where she states that

It was always my understanding that no binding contract would exist until a written agreement was fully negotiated and executed by each of the parties. Nor was I authorized to bind Defendant to sell the Painting without a signed written agreement.... No contract for the purchase of the Painting was ever signed by Defendant.... It was never my belief or understanding that a bind-

ing contract for the purchase of the Painting had been formed. Nor did I make such a representation to Mr. de Sarthe or any of his representatives.

(I. Albstein Aff. ¶¶ 4–6.)

Plaintiff responds to the affidavit by stating that if faced with the transcripts of the telephone conversation in a deposition, I. Albstein "will have to 'change her tune.'" (Pl.'s Mem. of Law at 16.)

■ The Court finds that the Judicial Admissions exceptions is not applicable. I. Albstein has submitted an affidavit clearly rejecting that she entered into a binding agreement with Plaintiff. There is no reason to believe that I. Albstein will "change her tune" in a deposition after she has submitted a sworn affidavit, and after she has become aware that Plaintiff recorded her conversations with Mr. de Sarthe. Furthermore, the Court's own examination of the telephone conversation between Mr. de Sarthe and I. Albstein reveals no indication that Ms. Albstein admitted to such an agreement. In fact, the conversation, when read as a whole, indicates that I. Albstein understood that she would not be bound by any contract until a written contract had been signed by the Parties.

As there is no written contract between the Parties, the Statute of Frauds defense applies. Defendant's Motion for Summary Judgment dismissing the claims alleging breach of contract and requesting specific performance is GRANTED.

**B. Promissory Estoppel**

Under New York law, a plaintiff must prove three elements to succeed on a claim of promissory estoppel: "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) unconscionable injury to the relying party as a result of the reliance." *Readco, Inc. v. Marine Midland Bank,* 81 F.3d

295, 301 (2d Cir.1996). *See also Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir.2000). "A claim for promissory estoppel may not be maintained under New York law where the alternative claim for bréach of contract is barred by the Statute of Frauds unless the circumstances make it unconscionable to deny the promise upon which the plaintiff relied." *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 146 F.Supp.2d 385, 405 (S.D.N.Y.2001). The unconscionable injury must be one "beyond that which flows naturally ... from the non-performance of the unenforceable agreement." *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 826 (2d Cir.1994).

Plaintiff argues that I. Albstein made a clear and unambiguous promise to Mr. de Sarthe to sell the Painting for $250,000 on January 20, 2004, upon which Plaintiff reasonably relied upon in its contract with a client to resell the Painting. The injury is unconscionable, according to Plaintiff because of the "severe financial loss," (Pl.'s Mem. of Law at 23), and the loss of one of its most important clients. (Id. at 22.)

█ The Court finds that there was not a clear and unambiguous promise upon which Plaintiff reasonably relied upon. Furthermore, Plaintiff, an art dealer, entered into negotiations to purchase the Painting, for the purpose of reselling the Painting to one of its clients. The unenforcement of the agreement would clearly result in the inability to resell the Painting. The Court finds that Plaintiff has failed to allege unconscionable injury that does not naturally flow from the unenforcement of the agreement.

Defendant's Motion to Dismiss the promissory estoppel claim is GRANTED.

## D. Fraud

According to New York law, a plaintiff alleging fraudulent misrepresentation must demonstrate: "(1) that the defendant made a misrepresentation; (2) as to a material fact; (3) which was false; (4) and known to be false by the defendant; (5) that the misrepresentation was made with the purpose of inducing the plaintiff to rely on it; (6) that the plaintiff rightfully did so rely; (7) in ignorance of its falsity; (8) to his injury." *Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133, 2004 WL 2793213, at *7 (S.D.N.Y. Dec 6, 2004) (citing *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994)).

"It is clear that a fraud claim is not established by simple allegations that the defendant failed to meet its contractual obligations." *Dornberger v. Metropolitan Life Insurance Co.*, 961 F.Supp. 506, 540 (S.D.N.Y.1997) (citing *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir.1992)). However, the New York Court of Appeals has held that a contracting party can be held liable for fraud when at the time he made a promise, he did not intend to keep it. *See Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); *see also Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986) (stating that a promise madé with the preconceived notion of not performing it constitutes a misrepresentation). The Court of Appeals set out its rationale in *Sabo v. Delman*, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957), where the Court quoted a previous Court of Appeals case as follows:

We think the allegations in the complaint describe a case where a defendant has fraudulently and positively as with personal knowledge stated that something was to be done and that his representations were false. It is not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which

something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur. Such statements and representations when false are actionable [as fraud]

3 N.Y.2d at 160, 164 N.Y.S.2d 714, 143 N.E.2d 906 (quoting *Ritzwoller v. Lurie,* 225 N.Y. 464, 122 N.E. 634 (1919)).

A misrepresentation cause of action is not redundant of a contract claim "where the fraudulent inducement involves misrepresentations of present facts which are collateral to the contract." *Dornberger,* 961 F.Supp. 506 at (citing *PI,* 907 F.Supp. at 761 (stating that a cause of action for fraud alleging that party made collateral or extraneous misrepresentation that served as inducement to the contract can be maintained)).

█ Plaintiff alleges fraud by Defendant, claiming I. Albstein misrepresented the identity of the true and lawful owner of the Painting. In support of its claim of fraud, Plaintiff relies upon four events: (1) when Mr. de Sarthe first contacted a Mr. Scharfman to determine if the Painting was available for purchase, Mr. Scharfman said that he was the owner but that it was complicated; (2) I. Albstein did not insert the information for the Seller in the copy of the written contract being circulated; (3) I. Albstein informed Plaintiff's attorney that the Seller was not a corporation but in fact, her brother A. Albstein; and (4) considering I. Albstein's "history of misrepresentations in sworn statements to this Court," the ownership of the Painting is far from certain. (Pl.'s Mem. of Law at 18.)

The Court is not persuaded by any of the allegations for fraud by Defendant, which appear to be mere speculations that Defendant is not the true and lawful owner. Aside from the various dealings Plaintiff considers suspicious, Plaintiff has asserted no other facts to support its pleading of fraud.

Defendant's Motion to Dismiss the fraud claim is GRANTED.

While Rule 15(a) of the Federal Rules of Civil Procedure requires that courts freely grant leave to amend "when justice so requires," courts deny such leave where amendment would be futile. *See Oneida Indian Nation of N.Y. v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir.2003) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)). Since Plaintiff has not, and cannot, allege any basis for the promissory estoppel or fraud claims, leave to amend would be futile. The Court therefore denies Plaintiff leave to amend the Complaint.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment dismissing the breach of contract and specific performance claims are GRANTED. Defendant's Motion to Dismiss the fraud and promissory estoppel claims are also GRANTED.

This case is DISMISSED and the Clerk of the Court is DIRECTED to remove this case from the docket.

SO ORDERED.